WILLIAM BALDRO, Plaintiff, *v.* WILLIAM F. TOLMIE *et al.*, Defendants.

*Reserved from Multnomah.*

1. Assumpsit is an action upon the case.
2. When the statute of limitations has become a perfect bar to a cause of action, the repeal of the statute does not destroy the bar.
3. Laws of the provisional government were in force prior to August 14, 1848.

THIS action was brought to recover damages for the violation of a contract, alleged to have been made in 1841, by the parties, for the purpose of prosecuting certain farming operations at Puget Sound, in the now territory of Washington. To the complaint, which avers a breach of said contract in 1842, the defendants make answer, and, among other things, say, that plaintiff's "supposed cause of action did not accrue to him at any time within six years next before the commencement of the suit," and to this answer the plaintiff demurs.

*A. Campbell*, for plaintiff.

*Pratt & Holbrook*, for defendants.

WILLIAMS, C. J.   Various statutes of limitation have been enacted in this territory, but the particular one, upon which defendants rely, is the Iowa statute of 1839, adopted here in 1844, and which provides, among other things, that "actions upon the case" shall be barred in five years.   Plaintiff, however, contends that this statute can be no bar to the present suit, for the reason that the cause of action, set forth in his complaint, is not embraced within that class described by said statute.   Under the old form of proceeding, this would

Baldro *v.* Tolmie.

have been an action of assumpsit, and the doctrine is laid down that assumpsit is " an action upon the case." (*Bacon's Abr. vol.* 1, *p.* 395 ; 2 *Blackstone's R. p.* 850.)

In the case of *Maltby & Bolls* v. *Cooper, Morris' Rep. p.* 59, the Supreme Court of Iowa expressly decides that the statute in question may be pleaded in bar to an action of assumpsit. To conclude that the legislature, in providing a limitation to all the different kinds of actions mentioned in the statute, intended to omit the most common kind of all, would be to form an opinion not very creditable to its judgment. No effect can be given to this statute, it is said, because it was repealed in 1849, and cannot, therefore, be set up as a bar to an action brought after its repeal. When a statute of limitation, which has run so long against a cause of action, as to become a perfect bar, is repealed, such bar is not thereby destroyed. (*Blackford's Reports.*)

Another ground taken in support of the demurrer, is that the answer avers *non accruit infra lex annos*, instead of " five years," as provided by statute. Doubts may well exist as to whether this answer would not be exceptionable under the old practice, though there are conflicting authorities upon the point; but under our present system, where informalities in pleading are not regarded, the objection is untenable, for it is demonstrably true that if plaintiff's cause of action did not accrue within six years, it did not within five years next before the suit. This statute, it is finally argued by plaintiff, is a law of the provisional government, and therefore had no force, until, with acts of a like origin, it was recognised by Congress on the 14th of August, 1848, in the act to establish the territorial government of Oregon. Confessedly, the provisional government of this territory was a government *de facto*, and if it be admitted that governments derive their " just powers from the consent of the governed," then it was a government *de jure*. Emigrants who first settled Oregon, upon their arrival here, were without any political organization to protect themselves from foes without, or to preserve peace within ; and, therefore, self-preservation constrained

them to establish a system of self-government... Congress, knowing their necessities, and withholding the customary provisions for such a case, tacitly acquiesced in the action of the people, and, on the 14th of August, 1848, expressly recognised its correctness and validity, by declaring that " the existing laws now in force in the territory of Oregon, under the authority of the provisional government, established by the people thereof, shall continue to be valid and operative therein," &c. Congress, it will be perceived, treats these laws as "now in force," and simply provides that they shall have the same effect under the government created by Congress, as they had under the government formed by the people. Doubtless, any act of the provisional government, inconsistent with the constitution or laws of the United States, would have been void; but, certainly, the statute in controversy is not obnoxious to any such charge. No reason can be imagined for holding that the people of Oregon, in 1844, had no right to make such laws as their wants required; for, where the functions of government have not been assumed or exercised by any other competent authority, it cannot be denied that such a power is inherent in the inhabitants of any country, isolated and separated as Oregon was from all other communities of civilized men. Some effort has been made to assimilate the laws in question to mere neighborhood agreements; but the argument seems to apply with equal force to the acts of all governments established by the people. Free government always results from an agreement among free men, and when put in operation, the acts of such a government are legitimate and binding upon all within its jurisdiction. Suppose the provisional government had been organized in rebellion, and afterwards the sovereignty of Oregon had been acknowledged at Washington, so far as the people here are concerned, the laws of such provisional government would date their validity from the time of their enactment, and not from the time of their recognition by the parent country. For a much greater reason would such be the case where, instead of rebellion, there was the exercise of

legislative power, with the tacit consent and future ratification of the general government. To admit even that the provisional government was a mere usurpation, would not be to decide that the statute in dispute did not take effect from its passage, for the courts of that government could not decide against its power to make the law, without in the same breath deciding against their own existence.

During thirteen years plaintiff has been sleeping under the shadow of judicial tribunals, competent at all times to do him justice, and now he comes forward claiming large damages for the violation of a parol contract, alleged to contain a multitude of provisions and conditions; thus showing the necessity of a law, which requires men to prosecute their suits while witnesses are possibly within reach of all parties, and before time and change have blotted out reliable proof from the frail records of human memory.

Holding, then, that the statute of limitations, of 1844, was valid in its inception, and became a complete bar to plaintiff's action before its repeal, we conclude that defendants are entitled to judgments on the demurrer.

Judgment for defendants.