Battle, J.
 

 The decision of his Honor in the Court below, is, we think, fully sustained by the case of
 
 Taylor
 
 v.
 
 Harrison,
 
 2 Dev. 374.
 

 That was an action of debt, commenced by a warrant, in March, 1828, upon a justice’s judgment, which had been obtained in May, 1821, and upon which the last y?,
 
 fa.
 
 had been issued in September following. By the Act of 1820, (B. O. 1820, ch. 1053,) it was provided, that no process to revive or enforce a justice’s judgment, should be brought,
 
 “
 
 but within three years from the date of such judgment, or from the date
 
 *392
 
 of the last execution, lawfully issuing on the same,” and that all process issued to revive or enforce it after that time, should be declared void, and might be abated on the plea of the defendant. At the session of 1825, another Act was passed, which declared,
 
 “
 
 that all actions of debt, grounded upon the judgment of a justice of the peace, which shall be sued or brought after the ratification of this Act, shall be commenced or brought within seven years next after the rendition of such judgment, or the test of the last execution, lawfully issuing on the same, and not after.”
 
 Tayl. H. oh.
 
 1296. The question was, whether the last Act, extended to, and revived, a judgment, which, before its passage, was barred by the Act of 1820. The Court held, that it did not. They say, “ it is evident, that the Act of 1825, altered the law of 1820, and made seven years, instead of three, a bar to justices’ judgments, in case they lay dormant during that time. But, is it credible, that the Legislature, by passing the Act of 1825, intended to disturb rights, which had been put to rest by the Act of 1820 ? The fair construction of the Act is, that it was intended it should operate in cases arising after its passage, or perhaps, upon cases where a three years bar had not run ; but not upon cases, which the Act of 1820 had already barred. Suppose a warrant had been brought upon the first judgment given by the justice of the peace, more than three years after its date, and before the passage of the Act of 1825, and it had been abated on the plea of the defendant, under the Act of 1820, would not this be a bar to a warrant brought after the Act of 1825 ? If the Act of 1820 was a bar in such case, was it indispensable that it should be called into action, before the bar was completed ?”
 

 This argument is in our opinion unanswerable, and it applies with as much force to the Act of 1852, ch. 51, sec. 2, as it did to the Act of 1825.
 

 We admit, that the Act of 1852, applying as it does to the remedy and not to rights of the parties, might have been made retrospective in its operation; but as it was in some degree intended to disturb a statute of repose, which is always
 
 *393
 
 favored, we will not be justified in allowing to it such an operation, unless its language clearly requires it. The words of the Act are, “ that on the trial of any suits before any of the Courts of this State, the time during which the parties to a suit shall not have been a resident, shall not be given in evidence, in support of the plea of the statute of limitations.”
 

 These words may be fully satisfied, by applying them to all cases where the bar of the statute of limitations (E. S. ch. 64, sec. 3.) had not already accrued. If the Legislature intended to apply them to a case like the present, the Act ought to have been entitled, “ An act to encourage litigation, by reviving stale claims.” But we do not believe, that it had any such intention, and the policy of the Act, even upon the most favorable construction, has been deemed so doubtful, that it has been omitted in the Eevised Code.
 

 Per Curiam.
 

 Judgment is affirmed.