ENGLISH & WILSHIRE *v.* CHICOT COUNTY.

COUNTY—*Powers of—how construed.*--Counties are political corporations, and as such, their powers are strictly construed.

AUDITING ACCOUNTS.---The power to audit and settle claims for or against a county, must be confined to such claims as the county had authority to contract.

SUBSCRIPTION TO RAILROAD STOCK.---The power to subscribe the internal improvement fund of a county, to the capital stock of a railroad company, does not carry with it the power to make the county responsible in her political character.

CANNOT ISSUE BONDS IN PAYMENT.---The act of January, 25, 1855, authorizing counties, *"having or controlling* internal improvement funds or credits granted to it by the State,"* to subscribe to the capital stock of any valid, duly authorized railroad company, did not authorize the counties to issue bonds of the counties in payment thereof, which, by any possibility would have to be paid by the tax payers of the county.

*Appeal from Chicot Circuit Court.*

HON. H. B. MORSE, Circuit Judge.

*English, Gantt & English,* for appellants.

The county court of Chicot had authority to subscribe the internal improvement fund of that county; see *sec. 52, chap. 101., p. 713, Gould's Dig.;* and that the Mississippi, Ouachita and Red River railroad company, was a valid and duly authorized railroad company; see *State v. same, 20 Ark., 495, on quo warranto.* Having authority to subscribe for stock, the power to issue its bonds, for stock taken, follows as an incident. *Seybert v. City of Pittsburg, 1 Wallace U. S., 272; 2 ib., 110; Commonwealth ex rel., Ribneth v. Council Pittsburg, 41 Penn. State R. 278;* and the presumption is, that the bonds were regularly issued; *Hartrup v. Madison City, 1 Wallace, 291.* Even if there were irregularities in issuing the bonds, they are nevertheless valid in the hands of *bona fide* holders; *Mercer Co. v. Hacket, 1 Wallace, 83; ib., 392.*

*Garland & Nash,* for appellees.

McClure, C. J.

It appears from the record, in this case, that the county of Chicot issued ten, $1000 bonds, in May of 1860, to the Mississippi, Ouachita and Red River railroad company, payable five years after the date thereof, with interest thereon, payable annually, at the rate of eight per cent. per annum.

The bonds numbered 2, 3, 4, 6, 7, and 8, have the following endorsements thereon, respectively :

"Pay to the order of Lloyd Tilghman, E. & C. Wilson, Secretary and Treasurer, M. O. and R. R. R. R. Co."

Pay to the order of English and Wilshire for collection.

A. M. TILGHMAN, Executrix.

In April of 1868, English & Wilshire presented these bonds to the county court, and asked an order for the payment of the principal and interest of these bonds. The county court refused to make an order for the payment of the bonds, and English & Wilshire prayed an appeal to the circuit court, which was granted. The action of the county court was sustained by the circuit court and they appealed to this court.

It appears from the record, that certain citizens of Chicot county presented a petition to the county court to subscribe the internal improvement fund of the said county to the capital stock of the Mississippi, Ouachita and Red River railroad company, for the purpose of enabling said company to complete said road, "to a point west of the Mississippi overflow, on the high lands of Drew county." In response to this petition the county court "ordered, adjudged, and decreed, that said county of Chicot, do subscribe to the capital stock of said railroad company, the sum of ten thousand ($10,000,) dollars, for the payment of which the internal improvement fund of said county, not already appropriated by order of this court, is hereby appropriated."

"And it was further ordered, adjudged, and decreed, that said county of Chicot shall issue, under the bond and seal of the county judge, attested by the clerk of the court, under his

official seal, ten bonds, each for the sum of $1000, payable in five or ten years from date, as the county attorney of this county shall deem most proper. bearing eight per cent interest, payable annually."

"And it was further ordered, adjudged, and decreed that all of the internal improvement fund of said county, now in the hands of the internal improvement commissioner, and not already appropriated by this court, or that may hereafter come into the hands of said commissioner, with all interest that may accrue on the same, is hereby set apart and appropriated as a fund to meet and liquidate the principal and interest of said bonds, as the same may become due."

And it was further "ordered, adjudged, and decreed, that the subscription is ordered upon the condition that said railroad company will receive said bonds at par, in payment for stock in said railroad," and the county attorney was authorized and empowered to represent the interest of the county, etc.

On the 23d of July, 1860, the county court had a settlement with the internal improvement commissioner, and it was ascertained that said commissioner had the sum of $8,669 86 of the internal improvement fund on hand. On the 5th of November, 1861, the internal improvement commissioner made another report to, and settlement with the county court, and from this report it appears that he received $9,864 60, of internal improvement fund since his previous settlement.

Thus it will be seen, that the commissioner received $18,534 46, which was specifically set apart for the express purpose of paying the bonds now in controversy. The fifth section of the act of January 22, 1855, authorized "the county court, of any county, to subscribe to the capital stock of any valid and duly organized railroad company, incorporated under any act of this State," the internal improvement fund, and to appoint an agent to represent the interest of the county. The proceedings we have detailed at some length, seem to have been taken under the provisions of this statute.

Of the $18,534 46, the county court ordered the commis-

sioner to cancel the bonds of the county, held by him, to the amount of $6,000 00, and that $6,000 of the capital stock of the railroad company be deposited in lieu thereof. Whether more than $6,000 00 of railroad stock was issued to the county does not appear; nor does the subsequent settlement of the commissioner show any other payment for railroad stock.

The question arising in this case is; did the act of January 22, 1855, authorize the county court *to issue the bonds of the county,* in payment of railroad stock? The bonds issued by the county court, and that are now in controversy, read as follows: "The county of Chicot acknowledges to be indebted to the Mississippi, Ouachita and Red River railroad company, in the sum of one thousand dollars, which sum the said county of Chicot promises to pay to the order of said railroad company, five years after date, with interest thereon, at the rate of eight per cent. per annum, payable annually." This bond, as will be observed, says nothing about the internal improvement fund being pledged to its payment, but at its head, it says, that it is "issued by an order of the county court, at the April term 1860."

The law referred to, authorizes counties "having or controlling internal improvement funds, or credits granted to it by the State," to subscribe to the capital stock of any valid and duly organized railroad company. The authority conferred by this act, as will be observed, is *not* that counties having internal improvement funds may *issue bonds;* but that counties having internal improvement funds may "subscribe to the capital stock of any duly organized railroad company of this State." It was not the intention of the framers of the act of January 22, 1855, to authorize the county court of any county in the State, to subscribe for stock in a railroad and issue bonds of a county in payment thereof that, by any possibility, would have to be paid by the tax payers of the county. It seems to have been the intention of the framers of the act, that the amount of stock which a county might subscribe for, should not exceed the amount that the internal improvement fund of the county would pay.

But to return to the question; did this act authorizing counties to "*subscribe*" for railroad stock, authorize the county court *to issue bonds* of the county to pay for it? In the enumeration of powers that belong to county courts, as fixed by section VII of Gould's Digest, chapter forty nine, (317,) we do not find that county courts are authorized to issue the bonds of the county for any purpose. Counties are political corporations and are created for specific purposes, which are well known. The county court stands in the same relation to the county, as do the board of directors to a private corporation. The powers of a corporation are construed strictly, and the act, creating it, is never construed to include only the exercise of such unexpressed powers as are absolutely necessary to carry into effect such as are expressly delegated. The power to tax the tax payers of Chicot county to pay for stock subscribed to a railroad company is not given by any statute within our knowledge, in force at the time these bonds were executed, and in the absence of any such statute the county court did right to reject the claim. But let us look at the question in another light and admit for the purpose of the argument, and we admit it for the purpose of the argument only, that the act authorized the county court to issue *the bonds of the county*, and pledged the internal improvement fund to their redemption; what then is the condition of the bondholders? We have said that the bond declares on the face of it, that it was "issued by an order of the county court, at the April adjourned term, 1860."

The question now arises, is not every holder of the bonds bound to take notice of the order of the court, and the conditions under which they were issued ?

By the terms of the order, authorizing the issue of the bonds, it is very clear that the county court intended the holders of the bonds, at maturity, should look to the internal improvement fund, and not to the tax payers of the county, for payment.

The order of April 26, 1860, is as follows: "And it is further ordered, adjudged and decreed that all of the internal im-

provement fund of said county, now in the hands of the internal improvement commissioner, and not already appropriated by this court, or that may hereafter come to the hands of said commissioner, with all interest that may accrue on the same, is hereby set apart and appropriated, as a fund, to meet and liquidate the principal and interest of said bonds, as the principal and interest may, respectively, fall due."

This was a specific appropriation of *all* the money belonging to that fund, which was then in the hands of the commissioner, and *all* that might thereafter come into his hands; and the county court had no more authority to direct this fund, after having thus appropriated it, from that specific purpose, than its members had to divide it among themselves. From the moment the county court made the order, the commissioner of the internal improvement fund became a trustee for the bondholders, and the county court no longer had control of the fund.

If the commissioner obeyed the order, there is, according to his own showing of money received, the sum of $21,039 36, in his hands, with which to pay this debt. If he has disobeyed the order, it furnishes no reason why the tax payers of Chicot county should now pay the bonds; nor does his disobedience furnish the county court with any legal excuse or reason for allowing it as a claim against the *county*, to be paid by future taxation. This claim is not a debt against the county, because, at the time the bonds were given, there was no law authorizing the creation of any such debt, as a county debt; nor is there any law, that we are aware of, that would authorize the county court to audit and pay a claim that they had no authority to incur under the laws of the State, and which they have not since been authorized to do.

It is urged that the act of January, the 22d, 1855, authorized the counties of this State, having internal improvement funds, to subscribe to the capital stock of a railroad company, and that the authority "*to subscribe*," carried with it, as an incident, the right and power to *issue bonds* in payment thereof;

and the case of *Seybert v. The City of Pittsburg*, (*1, Wal., 272,*) is cited as an authority in point. We do not so regard it.

In that case, counties and cities were authorized to subscribe to the capital stock of a railroad company, "as fully as an individual;" and the court held, that as an individual, by agreement with the company, could have given his bond for subscription, so could the city. The language of the act, under which these bonds were issued, did not authorize the counties to subscribe "as fully as an individual;" it simply authorized counties to use the internal improvement fund, belonging to the county, in payment of the stock subscribed. In other words, the act of January, 1855, did not authorize the county court, of Chicot county, to use the credit *of the county* in payment of subscriptions to the capital stock of a railroad company; it simply authorized the county court to subscribe the proceeds of a specific fund. If the object of this proceeding was to obtain an order from the county court directing the commissioner of internal improvement to pay the bonds and accrued interest thereon, out of the money in his hands, it ought to have so stated. An allowance of this claim by the county court, as a just and valid claim against *the county*, is beyond the scope and power of that body. The county court is authorized to audit and settle claims against the county; but, in the exercise of this power, they must confine themselves to the allowance of such claims as the county *had authority to contract.*

The power to subscribe the internal improvement fund of a county, to the capital stock of a railroad company, does not carry with it the power to make the county responsible in her political character.

The judgment of the circuit court is affirmed.