# THE BOARD OF SUPERVISORS OF PEORIA COUNTY

*v.*

## JAMES ROCHE.

1. COUNTY—*duty to pay expenses for protecting and preserving records and files of courts.* Under the R. S. 1845, title Fees and Salaries, the clerks of the circuit and county commissioners' courts were required to provide all the necessary books for their respective offices, and a safe, press or presses, with locks and keys for the safe keeping of the archives of their respective offices. Under this statute, by a liberal construction, cases, pigeon holes, or boxes, may be included, and when recommended by the circuit judge and assented to by the circuit clerk may constitute a proper charge against the county.

2. Where the judge of the circuit court ordered the clerk of his court to proceed and index old court papers, and properly put them away in tin boxes previously provided, and the clerk employed his deputy to do this work of nights, promising him whatever sum the county might pay therefor, and that if the county did not pay the deputy, he would: *Held*, in a suit by the deputy clerk against the county, that the county was not liable to pay for such service, it being the duty of the several clerks to do such work on their own account.

3. In such a case where the board of supervisors allowed a portion of the claim, they being under no legal obligation to do so, it was *held*, that this could not be construed into an acknowledgment of liability on the part of the county for such services.

APPEAL from the Circuit Court of Peoria county; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

Messrs. JOHNSON & HOPKINS, for the appellants.

Messrs. McCULLOCH & STEVENS, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

At the September term, 1869, of the Peoria circuit court, the judge of that court caused the following order to be entered on the record:

"The judge of the court having examined the condition of the office of the clerk of the circuit court of this county, and finding that the court papers are not sufficiently protected: It is ordered that the clerk of this court, as soon as the same can be done, procure sufficient and suitable cases, similar to those in the office of the county clerk, for the preservation of court papers from dust, moisture and other exposure—the expense of the same to be paid by Peoria county."

At the following December term this order was entered:

"The judge of this court having examined into the condition of the office of the clerk of the circuit court of this county, and finding said clerk, in obedience to an order of court made at the September term of this court, A. D. 1869, has procured a

sufficient number of boxes for the preservation of court papers, it is now ordered that said clerk procure a sufficient number of thimbles or envelopes for the further protection of said court papers, and that said clerk proceed at once to index said court papers, and properly put them away in said boxes."

These orders were admitted in evidence, against appellant's objection.

George A. Wilson was the clerk of the circuit court at this time, having been elected in 1868, the year previous. Appellee was his deputy. He was examined as a witness in the cause, and in answer to the question by the plaintiff as to the condition of these files and papers before the work was done, he said they were in small thimbles, some of them worn out; the boxes they were put in were not tight, and they were dusty and injured. Roche put them in new wrappers, endorsed the number and name thereon, number of the box, and term when disposed of, and entered them in alphabetical order upon an index; the work was worth five cents a package; was ordered by the court to do the work; told Roche he might do it and have whatever the county paid for it; told him he could do it evenings; witness wanted his services in the day time. Approved Roche's bill and told him to take it to the county clerk—the usual way of presenting a bill against the county; don't know the bill was ever presented to the board. The judiciary committee were in the office examining the bill; all of them not present; they came in with the bill in hand and said they wanted to see what work Roche had done, and witness showed it to them. On his cross-examination he said he told Roche if the county would not pay him, he would. This work and procuring the boxes are the only things witness ever knew to be done in the clerk's office upon an order of the court.

The plaintiff himself testified he was deputy clerk, and had worked in the clerk's office for the past five years. The papers he overhauled dated back to 1826, and up to 1860; they were papers in common law and chancery causes, which had

been disposed of by the court. Did it nights; worked about three hundred and twenty nights, averaging two and one-half hours. The papers were dusty outside; rapped the dust off. The clerk got the boxes to put them in. The clerk got him to do the work. The envelopes he put them in were already procured, printed on the outside. The average price per day paid in the clerk's office is three dollars for eight or nine hours, but worth more to do the work at night after business hours. The only contract he had was with Wilson. The clerk told him to do it and the board of supervisors would pay him; if they did not he, Wilson, would. Was at the time acting as deputy clerk. Thought he was working for the county, and Judge Puterbaugh (the circuit judge) told him the board of supervisors would pay him.

Several questions are presented by the record on these facts, which deserve examination.

In the order made at September term for the cases for the safe keeping of those old files, the expense was, as specified in the order, to be paid by the county. This was all well enough, as we have an old law to this effect. " The clerks of the circuit and county commissioners' courts shall provide all the necessary books for their respective offices, and a safe, press or presses, with locks and keys, for the safe keeping of the archives of their respective offices, and the county commissioners' court shall make allowances for the same." Ch. 41, title Fees and Salaries, sec. 32, R. S. 1845. By a very liberal construction of this provision, cases, pigeon holes or boxes might be included, and if ordered by the circuit judge, and the circuit clerk assented, might constitute a fair charge against the county. This charge for the boxes the county did pay without objection. But as to the musty old files, the clerk was directed to put in the boxes or cases in new thimbles, with proper endorsements on them. We are by no means satisfied there was the slightest obligation on the county to pay the expenses attending that. It was the duty of the predecessors of the clerk, Mr. Wilson, to have had these papers in

good order. They were required to give bond to the governor of the State, with security, in the sum of two thousand dollars, conditioned for the faithful performance of the duties of the office and to deliver up the papers, books, records and proceedings appertaining to it, whole, safe and undefaced, when lawfully required so to do, and they each took an oath that they would faithfully perform this duty. Is it not going too far to say that for this dereliction of duty on the part of these clerks the county treasury shall be depleted? The present incumbent may become derelict; he may fail to keep his papers in proper order; he may suffer them to become defaced by dust or exposure, or moisture. Would he think an obligation rested upon the county to pay his successor for his delinquency? Such is his sense of justice we are satisfied he would not.

The boxes being provided and paid for by the county, the least the clerk could do would be to put the papers properly in them, the necessary envelopes all printed and properly prepared having been furnished by the county.

If there was any liability on the county to pay for this work, from what did it arise? Not from any contract certainly, nor from any provision of law. The work was done under the order of the circuit judge, and in the order it was nowhere declared or provided it should be at the expense of the county, as in the previous order for the boxes and cases. The county employed neither the clerk, who was ordered by the judge of his court to do the work, nor the deputy who brings this action. There is certainly no privity whatever between the deputy and the county, whatever there may be between the clerk and the county, and we see none in either respect. Neither the judge of the circuit court nor the clerk had any right to pledge to appellee the credit of the county. On the contrary, the clerk, understanding his position, distinctly told appellee if the county did not pay him for the work, he would. The suit should have been brought by the deputy against the clerk, and not against the county, unless, as appellee contends,

6—65th Ill.

the county has become liable by paying a part of the claim. It seems when the bill was presented, the judiciary committee of the board, or a part of them, examined the character of the work done, and the board allowed appellee the sum of two hundred and thirty dollars therefor. Before accepting the order for this amount, appellee brought this action of assumpsit, and then went to the county clerk and received the order which the board had directed the clerk to issue for two hundred and thirty dollars.

In the absence of all legal liability on the county to pay anything for this work, we are not disposed to consider this allowance by the board as an acknowledgment of liability. The board, animated by what considerations we know not, were willing to pay, and did pay, what they conceived justice required them to pay; and it is ample compensation for work the clerk himself should have done without any compensation.

This clerk is required by law to keep all the papers in his custody in good order and in a safe place, and has no right to call upon the county to aid him in putting them in order and in security. We are not of opinion, under the circumstances of this case, that the payment made by the county should be construed into an acknowledgment of any liability beyond that they have admitted. The law imposes none on them.

It is unnecessary to make any comments on the disposal of the motion for a change of venue on account of the prejudice of the judge.

As to the point that an examination was ordered, that would not vitiate the judgment if otherwise proper. We are of opinion this action can not be maintained against appellants for the reasons given, and reverse the judgment.

*Judgment reversed.*