## Theis v. Board of County Com'rs of Beaver County.

No. 2106, Okla. T.   Opinion Filed October 5, 1908.

(97 Pac. 973.)

1.  **COUNTIES—Bonds—Sale—Contract With Broker.** By section 395, St. Okla., 1893, the power to negotiate the sale of county refunding bonds was conferred on the county treasurer exclusively, and the board of county commissioners of a county had no power to make a contract of employment with a broker to procure the sale of such bonds; and such a contract of employment entered into by the board of county commissioners was a void act, and the acts of the person so employed in pursuance of such contract created no liability against the county, however beneficial the services may have been to it.

2.  **LIMITATION OF ACTIONS—Statute—Retroactive Effect.** A statute of limitation is never given a retroactive operation unless it appears by express provision or necessary implication that such was the legislative intent.

3.  **SAME—Set-Off and Counterclaim.** That part of section 3, art. 7, c. 28. p. 328, Sess. Laws 1905, which provides that "such set-off or counterclaim shall not be barred by the statutes of limitations until the claim of the plaintiff is so barred," only affects set-offs or counterclaims existing at the time of its passage. It did not revive a set-off already barred by a former statute.

4.  **SAME.** A cause of action barred by the statute of limitations cannot be pleaded as a set-off.

5.  **SAME—Pleading Exception.** Where a party pleads an exception to toll the statute of limitations, a general denial puts him upon his proof as to such allegation.

(Syllabus by the Court.)

*Error from District Court, Woods County; John L. Pancoast, Judge.*

Action by George Theis, Jr., against the board of county commissioners of Beaver county. Judgment for plaintiff, and defendant brings error. Modified and affirmed.

*Francis C. Price* and *W. A. Ledbetter,* for plaintiff in error.

*R. H. Loofbourrow, County Atty.,* and *Cowgill & Dunn,* for defendant in error.

KANE, J.    This was an action brought by George Theis, Jr., against the board of county commissioners of Beaver county to recover on 35 warrants issued by said county in the aggregate sum of $3,166.84. The petition declares on each separate warrant, and is in the ordinary form.    One lot of the warrants, 16 in number, aggregating $2,750, without interest, was issued July 7, 1893.    The other lot of 19 warrants, aggregating the sum of $416.84, without interest, was issued in 1893 and 1894.    As to the second lot there is no contention, they having been held good by the district court. The other lot, aggregating $2,750, was held to be absolutely void.

The part of defendant's answer necessary to notice here is in words and figures as follows:

"Comes now the defendant, and for amended answer to the plaintiff's petition filed herein:    (1)    Denies each and every material allegation in said plaintiff's petition contained.    (2)    Answering further and referring specifically to the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth paragraphs of said plaintiff's petition, defendants allege: (a) That the county warrants number 2,084, 2,078, 2,080, 2,079, 2, 077, 2,076, 2,075, 2,089, 2,081, 2,082, 2,083; 2,085, 2,088, 2,087, 2,086, and 2,090, and which are described in said paragraphs of plaintiff's petition are illegal and void for the reason that the board of county commissioners had no authority to make the allowance on which said warrants were issued; that said warrants were issued in compliance with the terms of a void contract made and entered into by and between the plaintiff herein and the board of county commissioners of said county and territory, a copy of which contract is hereto attached, made a part hereof, and marked 'Exhibit A.'

"Exhibit A:    'Beaver, O. T.    July 7th, 9 o'clock a. m.    The board of county commissioners met in regular session with full board present, Com. Slaven in the chair.    Now comes George Theis, Jr., of Ashland, Kan., and filed the following proposition which was accepted by the board:    'To the Honorable Board of County

Commissioners, Beaver, Oklahoma Ter., July 7, 1893; For a commission of twenty-seven hundred and fifty dollars I will negotiate at par your county refunding bonds dated May 18th, 1893, for $11,000, of series B and will also relinquish my claim for past services rendered. Geo. Theis, Jr. ' The above proposition of Geo. Theis, Jr., is accepted. H. B. Slaven, Chairman. W. O. Cochran, Member. F. J. Birdsall, Member. Attest: Dyke Ballinger, County Clerk. "

The seventh paragraph of defendant's answer consisted of a set-off whereby it prays judgment in the sum of $1,500 with interest from March 28, 1893, on account of certain county warrants which on the 28th day of November, 1892, were issued to the plaintiff, George Theis, Jr., by defendant. It is alleged that these warrants were issued to the plaintiff under a void contract and in violation of law, as a commission for negotiating $7,500 of its county bonds, and that the amount of said warrants was afterwards paid to plaintiff by said county. A copy of the proposition or contract under which it is claimed the plaintiff negotiated such county bonds, and for which he was paid said $1,500 in county warrants, is made a part of the answer, and is in words and figures as follows:

"Adjourned Session, Sept. 5th, 1892, term. The board of county commissioners met in adjourned session, with all members present, Mr. Birdsall presiding in the chair. Minutes of the last meeting were read and approved. Now comes Charles E. King, agent for George Theis, Jr., of Ashland, Kansas, and files the following bid for all remaining county bonds, to wit: 'To the Honorable Board of County Commissioners of Beaver County, O. T.: Dear Sirs: We will negotiate $7,000 of your county bonds for 20 per cent. commission and agree to pay par for your county warrants for one year from this date, provided the issue does not exceed $9,000. Yours respectfully, Geo. Theis, Jr., by Chas. E. King, Agent.' On motion of Mr. Eubank, Mr. Theis' proposition was accepted. Charles E. King, agent for Geo. Theis, Jr., and J. Blanchard, county attorney, were instructed to draw up the necessary contract."

The original answer in which this $1,500 counterclaim is pleaded was filed on the 1st day of March, 1893, more than five

years after such warrants had been issued and paid; the answer being filed on the 13th day of October, 1899. Upon a demurrer being sustained to the paragraph of the answer pleading a set-off, the defendant amended the same by interlineation by adding the words, "that at the time this cause of action accrued and ever since the said plaintiff has been out of the territory"; the amendment being made to avoid the bar of the statute of limitations. To the answer of defendant the plaintiff filed his reply in words and figures as follows:

"First. That he denies each and every material allegation alleged in said amended answer and each count and paragraph thereof not hereinafter expressly admitted.

"Second. Said plaintiff for a separate reply to paragraph 'a' of defendant's second defense herein states: That on and prior to October 12, 1892, the financial condition of said Beaver county was such that it was unable to float its county warrants for current expenses except at a discount of about 50 cents on the dollar, and was compelled to and did issue its warrants for double the amount of the actual value and current value of all supplies purchased by said county, and for all services rendered for said county, except those fixed by statute. That at said time the legitimate current expenses of said county were in excess of all taxes collected and other sources of income, and the general condition of the finances of said county was such that investors would not purchase the warrants and obligations of said county at any price, and that, in order to preserve and administer the county government and purchase the necessary supplies for county officers and to pay the necessary current expenses of said county, it became necessary to make some arrangements for financial relief; and that, in order to carry on and administer the affairs of the county government of said Beaver county, an arrangement was made with this plaintiff whereby said county agreed, and through its commissioners ordered, that if plaintiff would take and pay cash at the rate of 95 cents on the dollar for 11 warrants issued by said county during the following year, except such as said county could care for, then said county would, at the expiration of said year, issue its refunding bonds in an amount equal to the warrants so taken up and paid for by plaintiff, dollar for dollar. And, in addition thereto, said county agreed with plaintiff to put said refunding bonds in his

hands to be negotiated by him for said county at par, and to pay plaintiff for the sale and negotiation of said bonds, and for his services in putting said county on a cash basis, and for cashing its warrants for 95 cents on the dollar, the current value of which was only 50 cents on the dollar, and for other services theretofore rendered said county, including advice and counsel to said county, consulting and employing an attorney to prepare a form and arrange for the printing and delivery of said refunding bonds, and for the maintenance and establishing of an office in said county in which and through which plaintiff could take up, and did take up and pay for the warrants of said county from time to time during said year; that, pursuant to this arrangement, plaintiff took up and paid for the warrants of said county during said year at the rate of 95 cents on the dollar amounting in the aggregate to the amount of $11,000; that refunding bonds of said county were issued in said sum of $11,000 pursuant to said arrangement May 18, 1893; that defendant was unable through the county treasurer or otherwise to negotiate said bonds or to find a purchaser therefor at any price, owing to the said financial condition of said county; that it was necessary to sell said bonds in order to meet the obligations of said county as aforesaid, and pursuant to said arrangements this plaintiff undertook to and did negotiate said bonds for said county at par after expending much time and labor and incurring great expense for that purpose. Plaintiff admits that thereafter, on July 7, 1893, the warrants referred to in plaintiff's second cause of action were issued and delivered to him pursuant to said agreement in payment for his said services in and about the negotiations of said bonds at par, the printing and delivery thereof, and the services hereinbefore referred to, including the payment of said warrants in the sum of $11,000.

"Third. Said plaintiff for a further and separate reply to the seventh and last paragraph of defense set up in defendant's amended answer states that he admits that he negotiated the refunding bonds of said county amounting in the aggregate to the sum of $7,500; that the plaintiff hereby adopts all that part of the second paragraph of his reply herein relating to the financial condition of said county, and makes the same a part hereof, and further alleges that such was the financial condition of such county at the time this plaintiff was employed to negotiate said $7,500 of bonds: and that, by reason of said condition, defendant and the

county treasurer of said county were unable to find a purchaser for said bonds at par, and it was necessary and imperative that said bonds should be negotiated to take up outstanding county warrants for which said bonds were issued; that the holder of such outstanding warrants refused to accept such bonds dollar for dollar for their said warrants, and were threatening to and would have sued said county on said warrants except for their speedy negotiation by plaintiff; that the consideration of said warrants issued to plaintiff by said county November 28, 1892, aggregating $1,500, and referred to in said seventh paragraph of defendant's amended answer, included plaintiff's services as a broker in securing a purchaser for said bonds at par, and his services in cashing the warrants of said county at par when said warrants were of the current value of only about 60 or 70 cents on the dollar, as stated in said defendant's answer, and said consideration also included services rendered by plaintiff to defendant at defendant's instance and request in procuring an attorney to pass upon said bonds so that they might be negotiated, together with advice and counsel relative to the printing, issuing, and delivery of said bonds. Plaintiff admits that said warrants were issued to him, but avers that it was for the lawful purpose hereinbefore stated."

The issues thus joined were tried to the court without the intervention of a jury; the court making no special findings. After the plaintiff introduced his evidence, which consisted of the warrants sued upon, and rested, the defendant demurred thereto on the ground that the same was insufficient in law to sustain the allegations of plaintiff's petition. Evidence was offered by the defendant for the purpose of showing that the defendant was absent from the territory, thus tolling the statute of limitations against their set-off. The $2,750 lot of warrants was held to be void, and on the other lot the plaintiff was allowed to recover the sum of $661.10, principal and interest. The court below found in favor of the defendant on its set-off in the sum of $2,684.25, principal and interest, and rendered judgment for the defendant in the sum of $2,023.15.

The plaintiff in error assigns 10 grounds of error for the reversal of the judgment of the court below, but all may be epitomized under two heads as follows: (1) The court erred in sus-

taining the demurrer to plaintiff's evidence as to the $2,750 lot of warrants; and (2) the court erred in rendering judgment for defendant on its set-off.

Before entering upon the discussion of the first of these general subdivisions, it is necessary to determine the relative positions of the parties as to the admitted facts under the state of the record as we find it. It seems to be well settled that, where a party demurs to the evidence, the general rule is that no evidence introduced by him can be considered upon the demurrer. The demurrant attacks the evidence of his adversary, and in the very nature of things this attack cannot be aided by his own evidence. He assumes the position which he occupies under the pleadings, and, if under the pleadings the burden of any issue rests upon him, that issue cannot be determined in his favor upon the demurrer. For the purposes of the decision of the demurrer he abandons all claim upon that issue, and as to an issue upon which he has not the burden, he cannot by his demurrer cause his own evidence to be taken as true or to be considered. 6 Enc. of P. & P. 444: *Reynolds v. Baldwin,* 93 Ind. 59.

The first inquiry then will be: What position did the demurrant occupy under the pleadings? And on what issues did he have the burden of proof? The answer of the defendant was in effect a plea of confession and avoidance. It was admitted that the warrants sued upon were duly issued by the board of county commissioners of Beaver county, but the contention was made on the part of the defendant that they were void because issued under and by virtue of an unlawful contract entered into between the plaintiff in error and the board of county commissioners of Beaver county. The reply denied all the allegations of new matter set up in the answer not thereinafter expressly admitted, and alleged that the warrants were issued under a contract entered into with the board of county commissioners differing somewhat from the contract set up in defendant's answer. That the warrants were issued in pursuance of a contract entered into between the plaintiff in error and the board of county commissioners is admitted. Tak-

ing this admission, which is clearly deducible from the pleadings, in connection with the evidence offered by the plaintiff, we have the following statement of facts, upon which the judgment rendered by the court below on the $2,750 lot of warrants must stand or fall: The plaintiff in error is the owner and holder of the warrants sued upon in the petition. They were regularly issued and signed by the chairman of the board of county commissioners of Beaver county, attested by the clerk of said county. They were issued for the purpose of paying the plaintiff in error a commission for negotiating refunding bonds in pursuance of a contract made and entered into by and between the plaintiff in error and the board of county commissioners of Beaver county. The question then arises: Had the board of county commissioners power to enter into any contract to pay a broker a commission for negotiating refunding bonds of the county? The warrants show on their face that they were issued for the purpose of paying the plaintiff a "commission for negotiating refunding bonds," and the pleadings show conclusively that the contract of employment was made with the board of county commissioners. Whether it was the contract set up in the answer of defendant or the one alleged by the plaintiff in his reply seems to us to be immaterial. The board of county commissioners could not allow claims against the county which grew out of contracts they were not authorized to make. *English v. Chicot Co.*, 26 Ark. 454; *Linden v. Case et al.*, 46 Cal. 171; *Richmond Co. v. Ellis*, 59 N. Y. 620; *Waymire et al. v. Powell et al.*, 105 Ind. 328, 4 N. E. 886; *Miller v. Embree*, 88 Ind. 133; *Foster et al. v. Clinton Co.*, 51 Iowa, 541, 2 N. W. 207; *Irwin v. Yuba Co.*, 119 Cal. 686, 52 Pac. 35. And a warrant issued for a claim growing out of a contract the county was not authorized to make created no liability against the county. *Linden v. Case, supra; Board of Supervisors v. Catlett's Ex'rs*, 86 Va. 158, 9 S. E. 999.

When the refunding bonds whose sale was negotiated by plaintiff in error were issued, section 395, St. Okla. 1893, was in force. This section provides that:

"When said bonds are received by the treasurer it shall be his duty, under the direction of the county commissioners and probate judge, to proceed to negotiate the same at not less than par, and the treasurer shall hold the proceeds thereof in his hands and shall apply the same to the payment of county warrants or script outstanding; and shall be chargeable with the amount received from said bonds, and credited with the payments made in manner and form as taxes received by him."

The foregoing section makes it the duty of the county treasurer to negotiate the sale of such bonds, and there is no authority granted the board of county commissioners to absolve the county treasurer from the performance of this duty and place it in the hands of a broker or attorney. Section 394, Okla. St. 1893, makes it the duty of the judge of the district court, after signing such bonds, to "deliver the same to the county treasurer, who shall then and there receipt to the county clerk for the amount thereof, and be chargeable therefor upon his bond." It is true section 395, *supra,* provides that the treasurer shall negotiate the bonds under the direction of the county commissioners and probate judge; but that he shall negotiate them himself at not less than par, and hold the proceeds of such negotiation in his hands, is mandatory. It cannot be argued with any degree of logic that the direction of the county commissioners and probate judge contemplated by the statute was such as to empower them to delegate the power to negotiate such bonds to any one but the treasurer, whose duty to do so is prescribed by law. The board of county commissioners and probate judge may direct the treasurer in the negotiation of the bonds, but they cannot take from him the power to make the negotiations nor compel him to accept less than par, and the board could not make a valid contract for their negotiation by a broker or other person. *Smith v. Los Angeles Co.,* 99 Cal. 628, 34 Pac. 439; *English v. Chicot Co.,* 26 Ark. 454; *Peoria Co. v. Roche,* 65 Ill. 77; *Rothrock et al. v. Carr. et al.,* 55 Ind. 334; *Hunt v. Fawcett et al.,* 8 Wash. 396, 36 Pac. 318; *Linden v. Case et al.,* 46 Cal. 171; *Richmond Co. v. Ellis,* 59 N. Y. 620; *Waymire v. Powell et al.,* 105 Ind. 328, 4 N. E. 886; *Miller v.*

*Embree*, 88 Ind. 133; *Foster et al. v. Clinton Co.*, 51 Iowa, 541, 2 N. W. 207; *Irwin v. Yuba Co.*, 119 Cal. 686, 52 Pac. 35. If a valid contract could have been made with a broker for the negotiation of the bonds in this case, it could have been done by the officer charged with the duty of negotiating them, and not by the board of county commissioners or the probate judge. The county treasurer, under the section of the statute above quoted, was responsible for at least the par value of the bonds. It seems to us that he should have negotiated the sale of them, and that permitting the board of county commissioners to enter into a contract taking away from him this important duty and placing it with a broker would be entirely inconsistent with the letter and spirit of the law, and might, in a good many instances, work a great hardship upon the treasurer.

The case of *Smith v. Los Angeles Co., supra,* is very strongly in point on the question now under discussion. The act under which the bonds were issued in that case reads, in part, as follows:

"Whenever bonds issued under this chapter shall be duly executed, * * * they shall be delivered to the county treasurer, and his receipt taken therefor, and he shall stand charged on his official bond with all bonds delivered to him and the proceeds thereof, and he shall sell the same, or exchange them under the direction of the board of supervisors. * * * He shall also keep a record of bonds sold or exchanged by him, * * * and shall also report, under oath to the board, at each regular session, a statement of all bonds sold or exchanged by him since the preceding report, and the date of such sale or exchange, * * * and the amount of accrued interest received by him on such sale or exchange, * * *"

Under this provision of the California statute, which is in many respects similar to our own, the board of supervisors employed the plaintiff in the case to procure a bidder for the bonds; the treasurer having previously advertised for bids and received none. The plaintiff under his employment procured a bidder to whom the bonds were sold at a premium of 5 per cent. and accrued interest, and, the board refusing to pay the commission, suit was commenced to recover the same. Mr. Justice Fitzgerald, who

delivered the opinion affirming the judgment of the court below denying the right to recover, says:

"It is clear that these provisions of the statute confer no express power upon the board of supervisors to make such a contract as the one sought to be recovered on in this action, and, unless it can be implied from subdivision 35 referred to, then it follows that no such power exists, and the contract sued on is therefore void, because not made in pursuance of law. As the act of March 14, 1883, distinctly enumerates the acts which the board is required to perform, with reference to the issuance and disposal of county bonds, and as the employment of a procurer of bids for bonds delivered to the treasurer for sale or exchange under the law was not in any way necessary to the full discharge of the legislative authority of the county government, no such implied authority to make such a contract was conferred upon the board as contended for. The board of supervisors cannot sell or negotiate the sale of its county bonds. That power is expressly conferred by statute on the county treasurer, and is to be exercised by him under the direction of the board. * * * The treasurer alone procures the bid. * * * The making of the contract in question by the board of supervisors was an unwarranted, if not a pragmatical, interference with the power and duties of the county treasurer, as expressly conferred and defined by law, * * * and the acts of plaintiff in pursuance of such employment, however beneficial they may have been to the defendant, created no liability against it."

The reasoning of the court in the foregoing case seems to us to be sound. It places the want of power of the supervisors to enter into contracts to employ brokers to negotiate bonds upon the ground that such duty is expressly placed by statute on the county treasurer, and is to be exercised by him alone under the direction of the board, and that making such a contract by the board of supervisors was an unwarranted interference with the powers and duties of the county treasurer, and therefore void. This also is the ground upon which we base our opinion in the case at bar, and in this we think the case at bar is clearly distinguishable from the cases cited in the very able brief of counsel for plaintiff in error. Take, for example, the case of *Armstrong v. Village of*

*Ft. Edward,* 159 N. Y. 315, 53 N. E. 1116, cited in support of their contention that the board had authority to hire a broker to negotiate the sale of the bonds. In that case Chief Judge Parker, who wrote the opinion, says:

"Those having charge of the selling of bonds have the right to exercise their discretion in selecting the agencies by which they shall make disposition of them."

Admitting this to be the law, it is not at all in conflict with this opinion. We hold that the county treasurer was the person having charge of the sale of the bonds at the time the bonds in this case were negotiated, and he, if anyone, was the only person who had a right to negotiate them or to exercise a discretion in selecting the agencies by which they should be sold, if such an agency was found to be necessary. We have examined the other cases cited by counsel, and find that in the main they are distinguishable from the case at bar as clearly and in the same particulars as *Armstrong v. Village of Ft. Edward, supra.* Taking this view of the law, we find no error in the action of the court below in sustaining the demurrer to plaintiff's evidence.

On the second point, as to whether the cause of action pleaded by way of a set-off was barred by the statute of limitations by that part of section 3, art. 7, c. 28, p. 328, Sess. Laws 1905, which reads, in part, as follows: "Such set-off or counterclaim shall not be barred by the statutes of limitations until the claim of the plaintiff is so barred." We are of the opinion that this provision is not applicable to the facts governing this case and the language of the act, not being retroactive, did not revive the same.

"It is an inflexible rule that a statute will be construed as prospective and operating in future only, unless the intention of the Legislature to give it a retroactive effect is expressed in language too clear and explicit to admit of reasonable doubt." (Black on Constitutional Prohibitions, §179, p. 230.)

The statute of limitations is a statute of repose, and such defenses are not looked upon unfavorably by the courts, but, on the contrary, are deemed to be in consonance with good morals and

sound public policy.  A statute of limitation which repeals a former statute on the same subject does not revive an action which has been barred by the former statute, unless such was clearly the legislative intent.  *Fuller & Fuller Co. v. Johnson,* 8 Okla. 601, 58 Pac. 745.  Part of the third syllabus of *Swickard v. Bailey,* 3 Kan, 507, ·cited by counsel for defendant in error, reads as follows:

"There can be no vested right to avoid payment of just debts, but, in construing statutes and repealing acts of limitation, we should avoid, if possible, depriving a party of a bar already had."

A statute of limitations will not be given a retroactive operation unless it appears by express provision or necessary implication that such was the legislative intent.  *Thoeni v. City of Dubuque,* 115 Iowa, 482, 88 N. W. 967.  The case of *Bradford v. Barclay,* 42 Ala. 375, is strongly in point on this question.  Defendant in the Barclay Case pleaded a set-off, and in reply plaintiff pleaded the statute of limitations.  After these pleadings were filed, a new statute was enacted excepting cases of set-off from the bar of the statute similar to the Oklahoma statute of 1905.  The court held that the new statute did not operate retroactively, so as to deprive plaintiff of his right to plead the bar of the old statute.

In addition to the foregoing, it seems other courts have uniformly held that a statute of limitations will not be so construed as to effect a cause of action barred at the time of its passage.  *Whitehurst v. Dey,* 90 N. C. 542; *McKinney v. Springer,* 8 Blackf. (Ind.) 506; *Thompson v. Read,* 41 Iowa, 48; *Cassity v. Storms, etc.,* 64 Ky. 452; *Ireland v. Macintosh,* 22 Utah, 296, 61 Pac. 901; *Fish v. Genett et al.,* 56 S. W. 813, 22 Ky. Law Rep. 177; *Stine et al. v. Bennett,* 13 Minn. 153 (Gil. 138); *Baldro v. Tolmie,* 1 Or. 176; *Pridgeon v. Greathouse,* 1 Idaho, 359; *Ivey et al. v. Blum et al.,* 53 Ala. 172; *People v. Columbia Co.,* 10 Wend. (N. Y.) 363; *Phillips v. Cameron,* 48 N. C. 390; *Bowman v. Cockrill,* 6 Kan. (2d Ed.) 190; *Woart v. Winnick,* 3 N. H. 473, 14 Am. Dec. 384; *Battles et al. v. Forbes,* 18 Pick. (Mass.) 532.  In *Richardson et al v. Penny,* 10 Okla. 32, 61 Pac. 584, it is held that "a cause of action barred by the statute of limitations cannot be pleaded as a

set-off." The learned counsel for defendant in error insists that the case of *Campbell v. Holt,* 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483, is a controlling case upon the point now under discussion, and that the Supreme Court of the territory and the Supreme Court of the state as its successor are committed to the doctrine therein laid down, that, as the law as construed by the Supreme Court of the United States was the law controlling the courts of Oklahoma Territory at the time of the trial of the case at bar, we are bound to follow such construction. Counsel is right in this contention, but we maintain we have not departed from this rule, nor was it necessary to do so in order to reach the conclusion we have arrived at. *Campbell v. Holt, supra,* holds that "the repeal of a statute of limitation of actions on personal debt does not, as applied to a debtor, the right of action against whom is already barred, deprive him of his property in violation of the fourteenth amendment of the Constitution of the United States." In that case there was no question about the act being retroactive in its effect. In the case at bar it seems to us to be equally clear that the language of the act is prospective, and therefore has no relation to causes of action which had been barred prior to its passage.

On the trial of the cause, the court below excluded evidence offered for the purpose of establishing the allegations of the defendant's answer affirmatively pleaded for the purpose of tolling the statute of limitations. The court acted upon the theory that it was not necessary for the defendant to establish these allegations, apparently overlooking the well-settled rule that, where a party pleads an exception to toll the statute, a general denial puts him upon his proof as to such exception. This action of the court was prejudicial to both parties. It tended to discourage the defendant, upon whom was the burden of proof, from establishing his case, as fully as he might possibly have been able to, and it also prevented the plaintiff in error from submitting proof on the other side of the proposition.

For this reason, we believe that the judgment of the court, so far as it affects the defense of the statute of limitations, ought to be set aside, and a new trial granted. On all other questions involved the judgment of the court below is affirmed, the costs of the action, up to the time of filing the mandate in the court below, to be divided equally between the parties, the costs thereafter to abide the further order of the court below.

All the Justices concur, except Dunn, J., not sitting.