CASE No. 1266.

COUNTY OF RICHLAND v. MILLER, CLERK OF COURT.

1. "The County of Richland" and "Richland County" are equivalent phrases, and in an action by that county, either designation may be used.
2. The board of county commissioners is not a court in such sense that its record may be pleaded in bar as evidence of a former recovery, or as *res judicata* in respect to a claim against the county allowed by the board.
3. While not a court, it is the agent of the county in regard to all matters within the scope of its agency. As to all such matters requiring discretion and determination, their acts are *quasi*-judicial and binding upon the county until set aside for fraud or collusion in a direct proceeding brought for that purpose; but those involving the exercise of no judgment, are ministerial, and, if erroneous, are void.
4. Where the board acts upon claims fixed in character and amount by law, as salaries, tax costs, &c., their action involves no discretion, but is purely ministerial.
5. The county may recover, from a clerk of court, moneys illegally or excessively charged by him for fees in State cases, even where his accounts have been audited by the board of county commissioners, approved by the Circuit judge, and warrants issued for their payment, and payment received from the county treasurer.

6. An action to recover the penalty for fees illegally charged, may be instituted by any party injured by the charge, and is not confined to parties to the cause in which the fees were taxed. Therefore, for illegal and excessive fees charged against a county, or collected from it, by a clerk of court, the county may bring action for the penalty prescribed by law, and their right to recover cannot be affected either by the action of the board of county commissioners in approving the account, or by the payment of the money by the county treasurer.

7. In action to recover, on a first cause of action, a sum of money, for fees illegally collected, made up of several items, and on a second cause of action for a penalty for such illegal charges, the answer interposed a plea "that in respect to many of the items constituting the said alleged cause of action, they are barred by the Statute of Limitations in such case made and provided." *Held*, that this plea was not separately stated so as to make it intelligibly distinguished as a defense to the second cause of action, and was, therefore, insufficiently pleaded.

McIver, A. J., dissenting.

———

Before Mackey, J., Richland, October, 1879.

The opinion fully states the case.

*Messrs. John E. Bacon, A. C. Moore* and *John R. Abney*, for plaintiff.

*Messrs. Melton & Clark*, and *Youmans*, attorney-general, contra.

August 19th, 1882.    The opinion of the court was delivered by

McGowan, A. J. This cause was heard at April Term, 1881, and as it involved questions of importance and difficulty, the court *ex mero motu* ordered it re-argued at November Term, 1881. The court has now reached a conclusion, which I am directed to pronounce.

Daniel B. Miller was clerk of the court of Richland county from January 1st, 1870, to January 1st, 1877. During that period, from time to time, he rendered his accounts against the county for costs alleged to be due him in certain cases prosecuted

in the sessions, in which the defendants had been discharged from inability to pay costs, &c.   These accounts, as to form, were regular, approved by the presiding judge of the Circuit, and audited for payment by the board of county commissioners then in office.   Some of these accounts were paid in full, and others in part, leaving balances which are still held as outstanding claims against the county of Richland.

In the year 1877, a commission was appointed by the governor to investigate the indebtedness of the county under the "Act to investigate and ascertain the actual *bona fide* indebtedness of the various counties in the State, and to regulate the manner of paying the same."   16 *Stat.* 312.   This commission reported that in the accounts of the defendant, as clerk of the court, before referred to as allowed, he had made overcharges to the amount of $2,127.55, and recommended that the penalty of ten times the amount overcharged provided by law be enforced.   The legislature adopted no plan for settling the indebtedness of the county of Richland as they did in regard to the indebtedness of the county of Charleston in the "Act to provide for the funding the debt of Charleston county" (16 *Stat.* 695; see *Holmes & Calder* v. *Charleston*, 14 *S. C.* 146); but the grand jury of the county of Richland recommended that the solicitor be ordered to take such legal steps as might be necessary for the protection of the county as suggested by the said report.

This action was brought, setting forth two causes of action— the first, to recover back $1,309.82, alleged to have been paid on the illegal charges, and to cancel those claims so far as they had not been paid; and the second, to recover $21,275.50, being the penalty of ten times the amount of the alleged overcharges.   The defendant put in several defenses:   That the plaintiff, as styled "The County of Richland," had not capacity to sue; denied that he had made any charges not authorized by law, and averred "that in respect to many of the items constituting the said alleged *cause of action,* they are barred by the Statute of Limitations in such case made and provided."   The case was heard by Judge Mackey, without a jury, who held that the county could sue in the style of "The County of Richland," overruled the

demurrers in the answer, and gave judgment for the defendant on the second cause of action, but for the plaintiff on the first, for the money paid on the audited accounts held by him to be illegal, $1,309.82, and the judgment went on to order the audited accounts, held to be illegal, and not yet paid, to be canceled; and to enjoin the county commissioners and the county treasurer from paying the same, or any accounts held by the defendant in his own right, or as assignee, until the judgment was paid. Both parties appealed—

*The defendant upon the following exceptions:*

*Third.* "The defendant further excepts to said judgment, and submits the following grounds therefor:

1. "Because the court erred in deciding that 'from these findings of fact, and conclusions of law, it appears that the charges as set forth in the complaint and exhibits are illegal.'

2. "Because the court erred in ordering and adjudging 'that the plaintiff have judgment against the defendant for the sum of *thirteen hundred and nine dollars and eighty-two cents,* with interest thereon from the dates when the several payments aggregating the sum were made to the said clerk.'

3. "Because the court erred in ordering and adjudging 'that the said illegal charges named in the above finding of facts be canceled, and that the said account of the defendant be canceled accordingly; and the defendant is hereby enjoined from collecting, and the county treasurer of Richland county is enjoined from paying the unpaid *pro rata* portion of the said illegal charges, and the county commissioners are enjoined from drawing any order or orders therefor.'

4. "Because the court erred in ordering and adjudging further 'that all moneys now in the hands of the county commissioners or the county treasurer for Richland county, to the credit of said Daniel B. Miller, or which may hereafter be in the hands of either of them, to his credit, be applied to this judgment; and that the said county commissioners and said county treasurer are enjoined from paying any of the accounts of the said Daniel B. Miller against said county, which he holds, either as original payee, or as assignee or otherwise, until this judgment is satisfied.' "

*First as to the capacity of the plaintiff to sue.* This court has held in a case lately decided, *ante page* 236, in which the defendant, Miller, was a party, that the plaintiff could sue by the designation of "The County of Richland," which is equivalent to the phrase "Richland County."

The defendant further insists that the first count does not state facts sufficient to constitute a cause of action. He denies that any of the items were illegal, but if so, as they were regularly audited by the board of county commissioners, the county cannot recover back money paid upon claims so audited, and that it was error in the Circuit judge to rule that the "board of county commissioners were not acting as *a court* in passing upon the accounts in question, but merely as an auditing board, and their proceedings were *ex parte* as regards the county."

We will not now enter into the inquiry whether the *particular items* of the accounts were, as alleged, illegal, or overcharges, but confine ourselves to the question whether the board of county commissioners who were in office at the time and audited the claims, had the power to consider and decide the different items so as to preclude the county of Richland from disregarding that audit. This is not an action to set aside the audit of the board for fraud or collusion with the defendant, nor to revise it; but ignoring that, it is in the nature of an action of *assumpsit* to recover money which *ex equo et bono* belongs to the county; and, therefore, the solution of the question depends, to a large extent, upon the jurisdiction of the board of county commissioners.

The constitution in Section 19, Article IV., provides that "the qualified electors of each county shall elect three persons for the term of two years, who shall constitute a board of county commissioners, which shall have jurisdiction over roads, highways, ferries, bridges, and in all matters relating to taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties; *provided*, that in all cases there shall be the right of appeal to the State courts."

The legislature has passed acts defining the powers and duties of county commissioners, which acts provide that county commissioners elected under the constitution shall have jurisdiction

in all matters relating to taxes and disbursements of money for county purposes. "*To examine, settle and allow all accounts chargeable against* such county, and draw orders on the county treasurer for the same, but no allowance beyond legal claims shall ever be allowed," &c.    15 *Stat.* 985.

The board of county commissioners is an important body. As was said in the case of *Ostendorff* v. *Charleston*, 14 *S. C.* 308, " It is the local administrative body of the county. The powers and duties of all the county boards (previously existing) were united in the board of county commissioners, and others, no less important, were added, *including the payment of contingent accounts formerly paid by the State.*"  The Circuit judge held that the board, in passing upon the accounts, was not acting " as a court," but merely as an auditing board, and, therefore, its action might be disregarded, and money paid under its order recovered back.

It is not easy to give an exact definition of *a court*, or to state what is indispensably necessary to constitute one. There are various kinds of courts, classified from the nature and extent of their jurisdiction, as courts martial, superior and inferior courts, and courts of general jurisdiction and local courts. The term seems to be general, without any well defined signification. In the case of *Ex parte Childs*, 12 *S. C.* 118, it was held that " The Court of Claims," established by the act of March 22d, 1878, (16 *Stat.* 555,) was not a court in the sense of the term as used in the constitution, so that the Supreme Court could issue to it a writ of *certiorari*.   It is there said that the question must be tested, not by the nature of the instrumentalities employed, " but rather from the objects which the legislature had in view in creating it, and the scope and extent of its powers."

Some of the powers incident to a court have undoubtedly been conferred on the county commissioners, but they are styled a *board* and not a *court;* its members are called commissioners, not judges; it was not created by the legislature under the judicial section (Article IV., § 1,) of the constitution, giving the power " to establish such municipal and other inferior courts as may be deemed necessary," but by the constitution itself. It does not proceed according to the forms generally deemed

essential to a court with parties before it as plaintiff and defendant, but in a summary way, without formal pleadings, evidence or record. It has no process to enforce its judgment, except the very efficient one of giving orders on the county treasurer for their payment. The right of appeal generally indicates judgment pronounced *between parties,* but the right of appeal here given could not have been intended for the benefit of the county, as one of the parties before a court, but for the persons presenting county claims. The commissioners for the time, being the only medium through which the county acts, it could not have been foreseen that an occasion would arise when the county or the people of the county, as distinguished from the commissioners, would be under the necessity of appealing as a suitor. *Chicot County* v. *Tilghman,* 26 *Ark.* 462.

In that case the party presented against the county a note. The commissioners *ordered it paid* by the county. The county attorney and other citizens made an effort to appeal in behalf of the county, and the court dismissed the appeal, saying: "As we have seen, the county court was vested by law with the power 'to audit, settle and direct the payment of all demands against the county.' From the judgment of the county court, in auditing, settling and directing the payment of demands against the county, an appeal is given, but this appeal only extends to such *persons* as may have an interest in the claim, and who feel aggrieved by the allowance or rejection of their demand; it has no reference to the citizens of a county, who are not interested in the allowance of the claim. The idea of a county appealing from the allowance of a claim made by its own county court is simply ridiculous. The county courts represent the county," &c.

We do not think that the board of county commissioners is a court in such sense that its record may be pleaded in bar as evidence of a former recovery, or *res adjudicata* in respect to a claim against the county allowed by the commissioners.

It does not, however, follow that the action of the board in auditing accounts is, in all respects, a *mere nullity* and may be entirely disregarded by the successors. The board is not a court, but it is the *agent of the county* in regard to all matters embraced

within the scope of its agency. While there may be successive boards composed of different individuals, the county remains the same, and the action of each board, upon matters fairly within its jurisdiction and submitted for the exercise of its *judgment*, is so far binding upon the county that it cannot, in a collateral manner, without the charge of fraud, ignore or disregard that action.

The commissioners are elected to decide between the county and those having claims against it, and it is not reasonable to regard their action as entirely without force, but, at the same time, there is some difficulty in determining the precise extent of that force. Several of the States have county boards similar to ours, called indifferently, " county courts," " boards of supervisors" and " county commissioners;" notably, New York, Illinois, Missouri and Arkansas; and in these States the extent of the powers and the precise effect of the action of such boards have been much discussed. Different views have been taken, and the cases are far from being in accord. The better opinion seems to be that, as to matters which require discretion, judgment, their acts within their jurisdiction are *quasi*-judicial, and binding upon the county something like the award of a board of arbitrators, unless they are assailed for fraud or collusion in a direct proceeding for that purpose; but their acts, which involve the exercise of no discretion or judgment, but are purely ministerial, if erroneous or against law, are void.

The case recently decided by this court against the defendant, Miller, as clerk of the board of county commissioners, is an example of the former class. In that case the law then of force did not fix the value of the clerk's services, but declared that he was entitled to reasonable compensation, *to be fixed by the board,* and in doing so it was necessary for them to *determine the number of days he was actually and necessarily employed.* *High Extr. Rem.* § 345; *People* v. *Supervisors of Livingston County,* 26 *Barb.* 118; *Big. Estop.* 173.

But in respect to the effect of the action of the board, there is a difference between acts *quasi*-judicial and those which are purely ministerial. In regard to the latter, nothing is submitted for the exercise of their judgment, and they are not the agents

of the county to *hear and determine,* but simply its ministerial officers. As to all claims against the county which are liquidated by law, determined in character and fixed in amount, such as *salaries, tax costs, &c.,* the commissioners are entrusted with no duty but to put them in proper form and have them paid as the law directs—the amount fixed by law—nothing more and nothing less. If they refuse they may be compelled to do so by *mandamus.* *The State ex rel. Marshall* v. *Starling,* 13 *S. C.* 266. In that case it is said: "The county commissioners have no discretion to allow or reject this claim. It is for a *salary,* and need not be audited. It is fixed by law and ordered to be paid. It is the duty of the county commissioners to check for a salary fixed in amount and ordered to be paid by the county, *as a ministerial* act positively required by law."

Suppose, in that case, the commissioners had undertaken to double the salary, and had issued their check for $1,200 instead of $600, can there be any doubt that the action, as against the county, would have been beyond the scope of their agency, and void? "Counties are political corporations, and, as such, their powers are strictly construed. The power to audit and settle claims against the county must be confined to such claims as the county had authority to contract." *English* v. *Chicot County,* 26 *Ark.* 454.

In the State of Missouri, it seems that the County Court performs the duties usually performed by courts of Probate, and also that of auditing county claims. In that State, the distinction we are considering was very clearly made in the case of *Carroll County* v. *Roberts,* 60 *Mo.* 404. The court says: "A distinction was, however, made in the cases of *Marion County* v. *Philips,* 45 *Mo.* 79, and *Owens* v. *Andrew County,* 49 *Mo.* 372, which, we think, a sound one. Settlements made with the County Court in regard to administrators, guardians, &c., may properly be considered as *judicial acts,* since they are judgments of a court on proceedings *inter partes* in which there is notice required, and in which the county and the court are not interested. *In settlements with collectors, it is a mere accounting between principal and agent, or between a supervisory agent and the subordinate.* I refer to the opinion of Judge Bliss, in 45

*Mo.* 171, where the learned judge has fully discussed the point and established this discrimination with the sanction of all the court."

In this State the county commissioners are authorized "to examine, approve and order paid all county claims, and to draw orders upon the county treasurer for the payment of the same; but no allowance or payment beyond legal claims shall ever be allowed." The costs allowed the clerk of the court are fixed by law, and as to these items of tax costs, the duty of the commissioners was purely ministerial. In respect to them, neither their allowance nor their amount is left or committed to the commissioners, whose duty is to put them in form, vouch them, and draw checks for them upon the treasurer. Whenever the county commissioners undertake to approve such accounts for sums larger than those fixed by law, they act beyond the scope of their agency, and such acts are not binding upon the county.

Our conclusion is as to plaintiff's first cause of action, that it does not matter whether the commissioners, in passing upon the accounts, were acting *as a court*, or merely as *an auditing board*, such action, until set aside, should have been respected, in so far as it was judicial, or *quasi*-judicial, in its character, the result of hearing and determining matters submitted to their judgment, but that it could not stand in the way of recovering back the erroneous excess, in so far as it related to tax costs fixed by law, as to which their duty was purely ministerial.

*The plaintiff also excepts upon the ground that it was error to hold*—"That the penalty of ten times the amount of fees sued for in the second cause of action is intended by the acts to be given to a party to a cause who has been charged an excessive fee; and the county, not having been *a party* to any of the causes in which these illegal charges and overcharges were made, is not entitled to recover the said penalty."

We think this was error. The acts which prescribe the penalty are as follows: "If any officer herein named shall charge any other fees, or for any other services than those herein recited, such officer shall be liable to forfeit to the party *injured* ten times the amount of excess of fees so improperly charged, to be recovered by suit in the Court of Common Pleas,

in which no imparlance shall be allowed," &c. Act 1839, 11 *Stat.* 14.

In 1872, this was re-enacted substantially, (*Gen. Stat.* 186,) and also in 1874 (15 *Stat.* 608). The right to sue for the penalty is "to the party injured," which means the real or *artificial person* injured by the excessive fees, and not necessarily *a party to a cause.* The services, for which the clerk is allowed to charge fees are often required to be done when no regular cause has been instituted, such as taking renunciation of dower, recording deeds, &c., &c. The county, as we have seen, practically, has no appeal from the action of its own officers, the county commissioners, which may result in depriving it of redress as to the allowance of excessive claims by those who are merely citizens, but as to *certain officers,* the law has prescribed a penalty for making excessive charges, and as to these, it is particularly important that the county, as a corporate body, should not be deprived of the right which all other injured parties have to sue for such penalty. It was held in the case of *Greenville County* v. *Runion,* 9 *S. C.* 1, that "the county of Greenville was a 'person aggrieved'" by the defalcation of the county treasurer, and, as such, could maintain an action on his official bond.

This action, for the penalty, is a distinct and separate remedy, independent of all agency of the board of county commissioners. As to this action, the audit of the accounts by the board with a view to payment, and even their actual payment, works no estoppel to the county, the party injured. The wrong intended to be punished was the *charging of excessive fees,* an act alone of the officer who makes such charges. The claim, so far as tax costs were concerned, needed no audit, the amount was fixed by law, and for charging excessive fees the penalty was also fixed by law, to be recovered in the *Court of Common Pleas.* If illegal charges have been made, the fact that they were allowed by the county commissioners cannot sanctify them or make legal that which was illegal, for the board of audit may have acted ignorantly or corruptly, and by allowing illegal claims only aggravated the wrong.

Upon the issue as to charging excessive fees, the fact that such

fees had been allowed by the board, would not be conclusive as matter adjudged, but, as we suppose, like any other pertinent fact, would be admissible only for what it was worth. Nor should the fact that such accounts have been partly paid, affect the action for the penalty, which is given to the party injured *as satisfaction* for the wrong done, which wrong was certainly not diminished but rather aggravated by enforced payment. *Palmer* v. *Conly*, 4 *Denio* 374; *Tinsley* v. *Kirby*, 8 *S. C.* 113.

The fifth defense is in these words: "This defendant avers that in respect to many of the items constituting the said alleged cause of action, they are barred by the Statute of Limitations in such case made and provided." As a plea of the Statute of Limitations, this is certainly very indefinite and informal. The objection that the action was not commenced within the time prescribed can only be taken by answer. *Jones* v. *Massey*, 9 *S. C.* 391. The defendant has the right to set forth in his answer as many defenses as he may have, "but each must be separately stated and refer to the cause of action which it is intended to answer, in such manner that they may be intelligibly distinguished." *Code*, § 173.

This defense does not purport to refer to any but *one* cause of action. If it were entirely regular in form, both by its terms and as explained in argument, it only refers *to some of the items*—those of 1870 and 1871—sued for in *the first cause of action*. We think, as a plea, it is not "separately stated so as to make it intelligibly distinguished" as a plea to the plaintiff's second cause of action for the penalty. It was error in the Circuit Court to overrule the second cause of action for the penalty.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the cause be remanded to the Circuit Court for a new trial, according to the principles herein indicated.

SIMPSON, C. J., concurred.

McIVER, A. J., dissenting.

As I cannot concur in the conclusions reached by a majority of

the court, I propose to state, as briefly as possible, the grounds of my dissent.

The board of county commissioners are the representatives or agents of the county for certain specified purposes, one of which is to examine and allow or disallow all claims against the county, and, therefore, their action, within the scope of their powers, is the action of the county itself, and, in the absence of any charge of mistake or fraud, absolutely conclusive against it. For, while the constitution does provide for the right of appeal, yet this must be regarded as a right secured to those presenting ·claims against the county, as it would be anomalous—not to use any stronger term—to say that the county could appeal from the act of its own agent. Hence, when the board has acted upon any matter within its jurisdiction, such action, even though erroneous, is final so far as the county is concerned, and the only remedy is that to which all other persons, natural as well as artificial, must resort, who are so unfortunate as to employ faithless or incompetent agents, viz.: To discharge those who have proved themselves to be inefficient or unworthy of trust, and employ others who are more honest and efficient.

It seems to me, therefore, that when the accounts of the appellant against the county of Richland were audited and approved by the board of county commissioners, such action of its own agents was conclusive against the county, and could only be assailed for fraud or mistake in a direct proceeding for that purpose.

New trial granted.