BOARD OF EDUCATION OF NORMAL SCHOOL DISTRICT

*v.*

CHARLES H. BLODGETT.

*Filed at Springfield January 14, 1895—Rehearing denied June 10, 1895.*

1. BONDS—*of school district—issued for unauthorized purpose, void.* Bonds given by the board of education of a school district to obtain money which was not borrowed or used for any purpose for which the board was authorized, by its charter, to borrow money or issue bonds, are void.

2. LIMITATIONS—*defense of Statute of Limitations is protected by the constitution.* A right of defense against a money demand, arising from the complete running of the Statute of Limitations, is property within the protection of the constitutional guaranty of due process of law.

3. MUNICIPAL CORPORATIONS—*cannot be deprived of defense of Statute of Limitations.* A school district or municipal corporation has the same constitutional protection that a natural person would have against the abrogation, by statute, of its already complete defense under the Statute of Limitations.

4. CONSTITUTIONAL LAW—*deprivation of remedy is deprivation of the right it vindicates.* Deprivation of a remedy is equivalent to the deprivation of the right which it is intended to vindicate, unless another remedy exists or is substituted for that which is taken away.

5. SAME—*a right of defense is a defendant's remedy.* A right of defense is a remedy of the defendant within the constitutional protection of rights.

6. SAME—*act of June 17, 1893, void.* The act approved June 17, 1893, to amend the statute in regard to limitations, (Sess. Laws of 1893, p. 139,) is unconstitutional and void.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

FIFER & PHILLIPS, for appellant.

JOHN E. POLLOCK, and A. J. BARR, for appellee :

Money paid for illegal bonds may be recovered back. *Jackson v. Hall,* 53 Ill. 440 ; *City of Louisiana v. Wood,* 12 Otto, 224.

It is claimed by opposing counsel that the bar of the Statute of Limitations having fallen, the legislature was

powerless to restore the remedy,—that the defendant has a vested right in the remedy. This question has been ably and conclusively discussed in *Campbell* v. *Holt*, 115 U. S. 620.

The distinction between the operation of the Statute of Limitations when applied to property adversely held and when applied to contracts for the payment of money, is this: In the one case it acts on the title, and, when the bar is perfect, transfers it to the adverse possession; while in the other there is no such thing as an adverse possession, but the statute simply affects the remedy, and not the debt. *Jones* v. *Jones*, 18 Ala. 249; *Williams* v. *Jones*, 13 East, 439; *Lerow* v. *Crowenshield*, 2 Mason, 157; *Medbury* v. *Hopkins*, 3 Conn. 472; *Lincoln* v. *Battelle*, 6 Wend. 475; *Byrne* v. *Crowenshield*, 17 Mass. 55; *Pearson* v. *Dwight*, 2 id. 84; *Egberts* v. *Dibble*, 3 McLean, 86.

Unless there be a constitutional inhibition, a legislature has power, when it interferes with no vested right, to enact retrospective statutes to validate invalid contracts, or to ratify and confirm any act it might lawfully have authorized in the first instance. Cooley's Const. Lim. 374; *Mortgage Co.* v. *Gross*, 93 Ill. 494; *Hawthorn* v. *People*, 109 id. 302; *Mason* v. *Wait*, 4 Scam. 127.

The act of 1893 is general, and not special, legislation. *Potwin* v. *Johnson*, 108 Ill. 79; *People* v. *Wright*, 70 id. 388; *McAunich* v. *Railroad Co.* 20 Iowa, 338; *McChesney* v. *People*, 99 Ill. 216; *Reynolds* v. *Foster*, 89 id. 257; *Streator* v. *People*, 59 id. 593.

There is no great court in this country that has held the exact question in appellant's favor. On the contrary, the exact question is decided in favor of appellee in *Campbell* v. *Holt, supra,* and in *Jones* v. *Jones, supra,* and cases cited; and analogous cases are *Hewitt* v. *Wilcox*, 1 Metc. (Mass.) 154, and *Wood* v. *Kennedy*, 19 Ind. 68. See, also, *Welch* v. *Wadsworth*, 30 Conn. 149; *Butler* v. *Palmer*, 1 Hill, 324; *Hampton* v. *Commonwealth*, 19 Pa. St. 329; *Baucher* v. *Nelson*, 9 Gill, 304.

Mr. JUSTICE BAKER delivered the opinion of the court:

The board of education of Normal school district, defendant below and appellant here, was incorporated in 1867, by special act of the legislature. (3 Private Laws of 1867, p. 329.) The act by which it was incorporated was declared to be a public act. On July 15, 1867, the board borrowed of W. E. Woodward $1500, and issued to him therefor three bonds, for the sum of $500 each, and numbered, respectively, 30, 31 and 32, said bonds bearing interest at the rate of ten per cent per annum, payable semi-annually. Said bonds were afterwards purchased from the holders thereof by Charles H. Blodgett, appellee herein, at their full face value. He held them until after their maturity, when new bonds of like import, numbered 60, 61 and 62, respectively, and dated September 1, 1873, and running five years, were issued to him in lieu thereof. On March 2, 1874, the board executed and delivered to appellee a certain other bond for $500, numbered 77, said bond bearing date said March 2, 1874, running five years, and drawing ten per cent interest, payable semi-annually. The bond states upon its face that it was issued in lieu of bond No. 36, surrendered, and the consideration therefor, $500, was paid by appellee to the treasurer of the board. Interest was paid on the original bonds until their maturity, and on bonds 60, 61, 62 and 77 up to September 1, 1877, but no interest has been paid on any of them since that date.

Section 9 of the charter of the board of education of Normal school district reads as follows: "For the purpose of erecting school houses and purchasing school sites it shall be lawful for said board to borrow, at a rate of interest not exceeding ten per cent per annum, and issue bonds therefor in sums not less than $100, which bonds shall be executed by the president and clerk of said board, in the name of the board, and countersigned by the treasurer of the board, and to secure the

payment of said bonds said board may mortgage any part or the whole property belonging to said board." And it is stipulated and agreed in the case at bar that the money for which the above mentioned bonds were given was not borrowed or used by the board of education for any purpose for which said board was authorized, by its charter, to issue bonds. The board of education had no power to issue the bonds, and they were void. It was so held by this court in 1880, in the case of *Hewitt* v. *Board of Education of Normal School District*, 94 Ill. 528.

Afterwards, an act was passed by the legislature, which was approved June 17, 1893, and in force July 1, 1893, and which act was as follows:

"An act to amend an act entitled 'An act in regard to limitations,' approved April 4, 1872, in force July 1, 1872.

"SECTION 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That an act entitled 'An act in regard to limitations,' in force July 1, 1872, be and the same is hereby amended, by adding thereto the following, to be numbered section 27:

"Sec. 27. That when any person has paid money into any incorporated school district of this State, and bonds have been issued by such corporation therefor, which are illegal, and where the Statute of Limitations has run against the recovery of the original consideration for which said bonds were issued, then, in such case, the Statute of Limitations is hereby extended, and the person so paying money for such illegal bonds, or his legal representatives or assigns, shall have a right of action in his own name, or as such representative, against such corporation, for one year from the time this act takes effect, and not after, to recover the amount of the original consideration paid for such bonds, together with six per cent interest per annum on such original consideration from the date that interest ceased to be paid on such bonds until July 1, 1891, and five per cent interest per annum thereafter." Laws of 1893, p. 139.

Thereupon, on July 6, 1893, and in less than a week after the act went in force, appellee brought this action of assumpsit in the McLean circuit court to recover the amount of the original consideration paid for the above mentioned bonds, with interest. The declaration consisted of the consolidated common counts. Appellant interposed the general issue and a plea of the five years statute of limitations, and appellee replied to the latter plea, counting upon the act approved June 17, 1893, concerning limitations. The case was finally submitted to the court under a stipulation which waived formal issues on the pleadings, both parties to have the full benefit of all the facts appearing in the agreed state of facts signed by them. The stipulation of facts and the bonds were all the evidence offered. The court, upon that evidence, found the issues in favor of the plaintiff below, and rendered judgment against the defendant below for $3900 damages, and costs of suit, and from that judgment this appeal was prosecuted.

The principal question at issue in the case is in regard to the constitutionality and validity of the act approved June 17, 1893. The claim of invalidity is based on various contentions made by appellant. One of these contentions is, that the act is in violation of the last clause of section 22 of article 4 of the constitution of Illinois, which provides as follows: "In all cases where a general law can be made applicable, no special law shall be enacted." Another is, that the act is a partial, unequal and invidious statute, and for that reason forms no part of that "law of the land" in accordance with which, by the rule of the common law and by the mandate of section 2 of the bill of rights in the State constitution, all men are entitled to have their rights determined. Another is, that under the constitution the legislature cannot create a debt against a municipal or school corporation for corporate purposes, and subject it to a tax for its payment, without its consent. And the other is, that

the statute is in conflict with the rule that when the bar of a statute of limitations has become complete by the running of the full statutory period, the right to plead the statute as a defense is a vested right, which cannot be destroyed by legislation, since it is protected therefrom by section 2 of the bill of rights incorporated in the State constitution, which declares that "no person shall be deprived of life, liberty or property without due process of law." We will consider the last of these contentions, only.

It has been stated so frequently in decisions and in the books that "due process of law" and "law of the land" mean one and the same thing, that it may be regarded as elementary.

As early as 1820 this court decided, in effect, that a completed bar of the Statute of Limitations is a vested right. In March, 1819, the first legislature of the State enacted "that all the laws and parts of laws passed by or under the authority of any territorial government heretofore existing, be and they are hereby repealed." A proviso excepted certain statutes of the territorial government, but did not except the statutes of limitation theretofore in force, and there was no saving clause that applied to them. The same legislature passed an act for the limitation of actions. (Laws of 1819, p. 351, and p. 141, sec. 8.) In *Naught* v. *Oneal*, Appendix to Breese, 29, and Beecher's Breese, 36, the court, in deciding a demurrer to a replication, said: "If the cause of action accrued one year or more before the repeal of the Statute of Limitations, still, the old Statute of Limitations is a good bar to the action. It is a complete bar before the repeal, and the repeal of a statute does not affect the rights acquired under the repealed statute." The question, as detached from tangible property, does not seem to have arisen in this court since that date, until now.

The doctrine, as we understand it, is well and correctly stated in Cooley on Constitutional Limitations,

(6th ed.)  On page 448 he says:  "When the period pre-
scribed by statute has once run, so as to cut off the
remedy which one might have had for the recovery of
property in the possession of another, the title to the
property, irrespective of the original right, is regarded
in the law as vested in the possessor, who is entitled to
the same protection in respect to it which the owner is
entitled to in other cases.  A subsequent repeal of the
limitation law could not be given a retroactive effect so
as to disturb this title.  It is vested as completely and
perfectly, and is as safe from legislative interference, as
it would have been if it had been perfected in the owner
by grant or any species of assurance."  And on page 454
he says:  "Regarding the circumstances under which a
man may be said to have a vested right to a defense
against a demand made by another, it is somewhat diffi-
cult to lay down a comprehensive rule which the authori-
ties will justify.  It is certain that he who has satisfied
a demand cannot have it revived against him, and he
who has become released from a demand by the opera-
tion of the Statute of Limitations is equally protected.
In both cases the demand is gone, and to restore it would
be to create a new contract for the parties—a thing quite
beyond the power of legislation."  The same doctrine is
stated by other text writers, in perhaps different but
equally strong language.  Sutherland on Stat. Cons. sec.
480;  Wood on Limitations, p. 26, sec. 11, and p. 30, sec. 12.

In almost all of the States of the Union in which the
question has arisen, it has been held that the right to
set up the bar of a statute of limitations as a defense to
a cause of action, after the statute has run, is a vested
right, and cannot be taken away by legislation, either
by a repeal of the statute without saving clause or by
an affirmative act, and that it is immaterial whether the
action is for the recovery of real or personal property, or
for the recovery of a money demand, or for the recovery
of damages for a tort.  *Brown* v. *Parker*, 28 Wis. 21; *Davis*

v. *Minor,* 1 How. (Miss.) 183; *McCracken Co.* v. *Mercantile Trust Co.* 84 Ky. 344; *Girdner* v. *Stevens,* 1 Heisk. 280; *Kinsman* v. *Cambridge,* 121 Mass. 558; *Bigelow* v. *Bemis,* 2 Allen, 496; *Stipp* v. *Brown,* 2 Cart. (Ind.) 647; *Ryder* v. *Wilson,* 12 Vroom, 9; *McKinney* v. *Springer,* 8 Blackf. 506; *Boldro* v. *Tolmie,* 1 Ore. 176; *Ball* v. *Wyeth,* 99 Mass. 338; *Prentice* v. *Dehon,* 10 Allen, 353; *Yancy* v. *Yancy,* 5 Heisk. 533; *Bradford* v. *Shine,* 13 Fla. 393; *Moor* v. *Luce,* 29 Pa. St. 260; *Crouch* v. *McKee,* 6 Ark. 484; *Woodman* v. *Fulton,* 47 Miss. 682; *Wires* v. *Farr,* 25 Vt. 41; *Rockport* v. *Walden,* 54 N. H. 167; *Lockhart* v. *Horn,* 1 Woods, 628; *Harrison* v. *Stacey,* 6 Rob. (La.) 15; *Thompson* v. *Read,* 41 Iowa, 48; *Atkinson* v. *Dunlap,* 50 Me. 111; *Whitehurst* v. *Day,* 90 N. C. 542; *McMerty* v. *Morrison,* 62 Mo. 140. The rule, however, is held to be otherwise as to debts, in Texas and in Alabama. *Bentinck* v. *Franklin,* 38 Texas, 458; *Jones* v. *Jones,* 18 Ala. 248.

Great reliance is placed by appellee on the prevailing opinion in *Campbell* v. *Holt,* 115 U. S. 620, where it was held that a debtor has no property in the bar of a statute of limitations as a defense to a promise to pay a debt, and that such bar, after it has become complete, may be removed by a statute. The decision, however, was by a divided court, there being a vigorous dissenting opinion by Justice BRADLEY, which was concurred in by Justice HARLAN. The doctrine of the dissenting opinion is most in consonance with former decisions of this court, and is supported by the great weight of authority. That opinion seems to us to present the better view. It expresses so strongly and so well our understanding of the law, that we will quote from it at some length. The learned justice says that the constitutional provision that forbids that any person should be deprived "of life, liberty or property without due process of law," was intended to protect every valuable right which a man has. He then adds: "The words 'life, liberty and property' are constitutional terms, and are to be taken

in their broadest sense. They indicate the three great subdivisions of all civil right. The term 'property,' in this clause, embraces all valuable interests which a man may possess outside of himself,—that is to say, outside of his life and liberty. It is not confined to mere tangible property, but extends to every species of vested right. In my judgment it would be a very narrow and technical construction to hold otherwise. In an advanced civilization like ours a very large proportion of the property of individuals is not visible and tangible, but consists of rights and claims against others or against the government itself. Now, an exemption from a demand or an immunity from prosecution in a suit is as valuable to the one party as the right to the demand or to prosecute the suit is to the other. The two things are correlative, and to say that the one is protected by constitutional guaranties and that the other is not, seems to me almost an absurdity. One right is as valuable as the other. My property is as much imperiled by an action against me for money, as it is by an action against me for my land or my goods. It may involve and sweep away all that I have in the world. Is not a right of defense to such an action of the greatest value to me? If it is not property in the sense of the constitution, then we need another amendment to that instrument. But it seems to me that there can hardly be a doubt that it is property. The immunity from suit which arises by operation of the Statute of Limitations is as valuable a right as the right to bring the suit itself. It is a right founded upon a wise and just policy. Statutes of limitation are not only calculated for the repose and peace of society, but to provide against the evils that arise from loss of evidence and the failing memory of witnesses. It is true that a man may plead the statute when he justly owes the debt for which he is sued ; and this has led the courts to adopt strict rules of pleading and proof to be observed when the defense of the statute is interposed. But it is, never-

theless, a right given by a just and politic law, and, when vested, is as much to be protected as any other right that a man has. The fact that this defense pertains to the remedy does not alter the case. Remedies are the life of rights, and are equally protected by the constitution. Deprivation of a remedy is equivalent to a deprivation of the right which it is intended to vindicate, unless another remedy exists or is substituted for that which is taken away. This court has frequently held that to deprive a man of a remedy for enforcing a contract is itself a mode of impairing the validity of the contract. And, as before said, the right of defense is just as valuable as the right of action. It is the defendant's remedy. There is really no difference between the one right and the other, in this respect."

The political rights and privileges delegated to counties, school districts and cities are not within the constitutional provisions against laws which impair vested rights, but their property rights are protected by the same constitutional guaranties which shield the property of individuals from legislative aggression. *People ex rel.* v. *Mayor, etc. of Chicago,* 51 Ill. 17; *County of Richland* v. *County of Lawrence,* 12 id. 1; *Milan County* v. *Bateman,* 54 Texas, 153; *Trustees, etc.* v. *Mayor, etc.* 13 S. & M. 645; *Grogan* v. *San Francisco,* 18 Cal. 590; *City of Dubuque* v. *Illinois Central Railroad Co.* 39 Iowa, 56.

In our opinion the act of June 17, 1893, amendatory of the act in regard to limitations, is unconstitutional and invalid. It follows that the circuit court erred in its rulings upon some of the propositions of law submitted to it, and in rendering judgment against the defendant.

The judgment is reversed.

*Judgment reversed.*