*In re* APPLICATION OF THE COUNTY COLLECTOR OF COOK COUNTY, for Judgment and Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for the Year 1983 and for the Determination of the Correct Amount of 1983 Taxes Paid Under Protest (Edward J. Rosewell, Applicant-Appellant, v. Atlas Corporation, Objector-Appellee).

First District (2nd Division)   No. 1—91—1730

Opinion filed November 30, 1993.—Rehearing denied January 24, 1994.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy, Daniel E. Cannon, and Robert O. Carroll, Jr., Assistant State's Attorneys, of counsel), for appellant.

Jacobson, Brandvik & Anderson, of Chicago (Craig E. Anderson, Ralph L. Berke, and Charles J. Corrigan, of counsel), for appellee.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

This is an appeal by the county collector of Cook County (collector) from the trial court's judgment granting a partial refund to Atlas Corporation for real estate taxes paid in full and under protest.

The Cook County assessor proposed an assessed valuation of $2,771,691 for the tax year 1983 on real property owned by Atlas in Melrose Park. On Atlas' complaint, the Cook County Board of Appeals reduced the 1983 assessed valuation to $1,596,901. Atlas paid $250,761.14, under protest, which was the full amount of taxes due based on the reduced assessed valuation. Atlas filed an objection to the collector's application for determination of the correct amount of 1983 taxes paid under protest. The trial court found a lower assessed valuation and ordered a proportionate refund of taxes paid by Atlas. The collector argues that the objector failed to establish by clear and convincing evidence that the assessed valuation was constructively fraudulent. We find merit in this argument and reverse the trial court's judgment.

James McIlrath, president of Atlas, testified that Atlas purchased a vacant lot in March 1982, for $1,554,093, and began construction of a warehouse on the lot in August 1982. The construction was completed in August 1983 at a total cost of $3,965,041. The warehouse, located between two rail lines, had little office space, low lighting, minimal parking and minimal heating and insulation. The Village of Melrose Park issued a certificate of occupancy for the warehouse on August 20, 1983.

Richard Buchaniec, who was a designated appraiser employed by the Cook County assessor's office from 1981 to 1985, testified for Atlas. He stated that in 1984, while employed by the assessor, he recommended to the assessor a valuation of nearly $5.4 million for

the improved property. He used the actual construction cost of more than $3.9 million and the $1.55 million price of the land as the basis for the recommended evaluation. Unimproved property is assessed at 22% of its fair market value, while improved property is assessed at 40% of its fair market value. Since the property was improved for only one-third of 1983, on Buchaniec's appraisal, the property should have been assessed much less than $1.6 million.

The collector stood on its application, offering no evidence in response to the objection.

The trial court held that the unrebutted evidence showed that the property was unique, and therefore it applied the cost approach rather than the market approach to valuing the property. The trial court found that the fair market value for the property after improvement was $1,554,000 for the land plus $3,965,041 for the building.

The trial court found that the property should be assessed as improved property for 133 days (from August 20 to the end of the year), and as unimproved for 232 days (from January 1 through August 19). For the first 232 days of the year, the trial court found the actual value of the property was the price Atlas paid for it. Thus, the trial court calculated the total assessed value of the property for the 1983 tax year as:

$$\$1,554,000 \times 232/365 \times .22 = 217,305$$
$$+\$(1,554,000 + 3,965,041) \times 133/365 \times .40 = 804,419$$
$$\text{Total assessed value} \quad \$1,021,724.$$

The trial court concluded:

"The final assessed valuation reached by the assessor must have been in total disregard to the value recommended to him by his own expert. No other reasonable or rational explanation can be found in this evidence. The failure by the assessor to offer any testimony as to why the assessor might have rejected what appears to be a reasonable and rational approach to valuation leaves this court with no alternative but to conclud[e] that the assessment was reached through constructive fraud."

■ The parties agree that our supreme court stated standards applicable for review of the trial court's decision in *In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 546 N.E.2d 506. In that case the collector taxed property owned by Ford Motor Company based on a market value of $34 million. A certified appraiser testified for Ford that the property had a fair market value of $19.5 million, and another appraiser testified for the collector that the property was worth $28 million. The trial court found the property worth $23

million and held that the collector's valuation was so excessive as to amount to constructive fraud. Although our supreme court found the trial court's valuation of the property was not contrary to the manifest weight of the evidence, it reversed the trial court because Ford failed to prove constructive fraud by clear and convincing evidence. Our supreme court said that the assessor's overvaluation of the property

> "does not necessarily mean that the trial court was justified in setting aside the assessment. [Citation.] This court has repeatedly held that the taxation of property is a legislative rather than a judicial function [citation], and that, in the absence of fraud, the courts have no power to review the valuation of property fixed for taxation purposes by the appropriate assessing officers [citation].
>
> A taxpayer may challenge an assessment on the basis of either actual or, as here, constructive fraud. [Citation.] A presumption exists that a tax is just and that the officers levying it have honestly discharged their duties [citation]; the burden is on the taxpayer to establish, by clear and convincing evidence, that the taxing authorities have not exercised their honest judgment and that the assessment is constructively fraudulent. ***
> ***
> *** While the extent to which a property has been overvalued by the assessing officer is a factor considered by the court in deciding whether an assessment is constructively fraudulent [citation], proof of overvaluation, alone, will not establish fraud [citation]. To be fraudulent, the overvaluation of property must not only be excessive, it must also be made under circumstances indicating that the assessment was not made in the exercise of honest judgment. [Citation.]
> ***
> *** [M]ere proof of an excessive assessment does not shift the burden to the assessing authority to explain the assessment. [Citation.]
>
> We recognize that, given this burden of proof, the taxpayer may be required in some cases to call the assessor to testify as to the manner in which the assessment was made. In the cases cited above in which constructive fraud had been established, a member of the assessing authority offered testimony which failed to explain satisfactorily how the value of the property in question was determined. *** We do not believe requiring the taxpayer to offer evidence of the circumstances surrounding the assessment imposes an undue burden." *In re Application of the County Treasurer,* 131 Ill. 2d at 550-54.

Although Ford proved overvaluation, the court emphasized that this was not enough:

"The objecting taxpayer must offer some additional evidence that the discrepancy is not the result of the assessor's mistaken judgment. Here, unlike the cases in which this court found assessments to be constructively fraudulent, no evidence was presented concerning the circumstances under which the assessment was made from which the trial court could determine that the assessment was not based on the assessor's honest judgment." *In re Application of the County Treasurer*, 131 Ill. 2d at 554.

Atlas contends that it made the proof required by the case cited above by proving overvaluation and by presenting some evidence of the circumstances surrounding the assessment, through the testimony of Buchaniec, who had been a designated appraiser for the assessing authority. Atlas showed that the assessor's office had access to documents reflecting the cost of the land and the construction.

■ The above-cited case requires the objector to present clear and convincing evidence from which the trial court can conclude that the taxing authorities have not exercised their honest judgment. The evidence Atlas presented is not sufficient. Buchaniec did not testify as to who decided that the property had an assessed value of $2,771,691, nor did he say how that figure came to be used. The trial court can conclude that the final decision-maker concerning this assessed valuation rejected Buchaniec's recommendation, but this is not clear and convincing evidence that in so doing the assessor was not exercising his honest judgment.

The assessor also had documents reflecting the cost of the property. Since the assessed value is more than 50% greater than the assessed value based on cost calculated by the trial court, the trial court can conclude that the assessor did not base the assessed value on the documented costs. Buchaniec did not testify regarding data pertaining to sales of comparable properties. Thus, while the trial court can conclude that the assessment was not based on one set of readily obtainable facts concerning cost, the trial court cannot conclude that the assessment was not based on readily available facts concerning the market value of the property. (See *People ex rel. Munson v. Morningside Heights, Inc.* (1970), 45 Ill. 2d 338, 341, 259 N.E.2d 27.) Therefore the trial court cannot conclude from evidence of the data available to the assessor that the assessor failed to exercise its honest judgment.

Atlas argues that the trial court properly applied the cost method to determine the fair market value of the property. As this court held in *In re Application of the Collector of Cook County* (1987), 161 Ill. App. 3d 860, 878, 515 N.E.2d 731, "a legitimate difference of opinion regarding appraisal methodology" cannot amount to

constructive fraud. Although the evidence supports the trial court's finding that the cost method was appropriate, the evidence cannot support a finding that use of data from comparable sales, if the assessor used such data, would constitute constructive fraud. The propriety of the cost method of appraisal here cannot justify overturning the assessment of this property.

In summary, Atlas presented some evidence concerning the circumstances in which the assessor came to the alleged overvaluation of Atlas' property, but Atlas did not present sufficient evidence to show that the assessor did not exercise his honest judgment to arrive at that valuation. The collector's failure to present any rebuttal evidence cannot help Atlas meet its initial burden of proving constructive fraud by clear and convincing evidence. The judgment of the trial court in favor of Atlas is, accordingly, reversed, and the assessment of the property by the Cook County Board of Appeals is reinstated.

Reversed.

SCARIANO and DiVITO, JJ., concur.