*In re* APPLICATION OF EDWARD J. ROSEWELL, as County Treasurer and *ex officio* County Collector of Cook County, for Judgment and Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for the Year 1985 (Edward J. Rosewell, Applicant-Appellee, v. J.C. Penney Company, Inc., Objector-Appellant).

First District (5th Division)   No. 1—95—0917

Opinion filed February 7, 1997.—Rehearing denied March 18, 1997.

Terrence J. Griffin, of Eugene L. Griffin & Associates, and Marilyn Martin, of Ambrose & Cushing, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Mary T. Nicolau, Robert O. Carroll, Whitney T. Carlisle, and Patricia M. Shymanski, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE HOURIHANE delivered the opinion of the court:

This is an appeal by J.C. Penney Company, Inc. (Penney), from an order of the circuit court denying Penney's request for a reduction in the assessed valuation of certain real property and partial refund of taxes paid in full under protest.

The Cook County assessor (assessor) proposed an assessed valuation of $6,014,504 for tax year 1985 on Penney's North Riverside retail store. On Penney's complaint, the assessed valuation was reduced to $4,357,919. Thereafter, Penney filed a complaint with the Cook County Board of Tax Appeals, which denied any relief. Penney paid the corresponding tax of $587,866.94 in full under protest and subsequently filed an objection to the application of the Cook County collector (collector) for judgment and order of sale. The trial court ruled that Penney had failed to demonstrate actual or constructive fraud by the taxing authority and denied Penney's objection. In its post-trial motion for reconsideration, Penney argued that the trial court misapprehended the law as to Penney's burden to establish fraud by the taxing authority. Penney also argued that, in any event, pursuant to a 1994 amendment to the Property Tax Code (Pub. Act 88—642, § 5, eff. September 9, 1994 (amending 35 ILCS 200/23—15) (West Supp. 1993))), which became effective three months after trial in this matter, Penney need not demonstrate constructive fraud. The trial court denied Penney's motion to reconsider, finding that the 1994 amendment did not apply (and even if applicable, was unconstitutional). Penney sought immediate appeal before the Illinois Supreme Court (134 Ill. 2d R. 302(a)), which remanded the matter to this court for disposition (155 Ill. 2d R. 365).

On appeal, Penney argues that a 1995 amendment to the Prop-

erty Tax Code (Pub. Act 89—126, § 5, eff. July 11, 1995 (amending 35 ILCS 200/23—15 (West 1994))) applies to the instant case and eliminates the burden of proving constructive fraud. In the alternative, Penney argues that the 1994 amendment controls and similarly removes the requirement of demonstrating fraud. Finally, Penney contends that even if the statutory amendments are inapplicable, it made an adequate showing of fraud and the judgment of the trial court should be reversed.

The collector counters that either amendment may only be applied prospectively and that the trial court correctly applied the doctrine of constructive fraud to the evidence presented at trial.

For the reasons set forth below, we affirm.

I

■ At the time of trial in this matter, it was settled law, and the parties so stipulated, that an objecting taxpayer must demonstrate actual or constructive fraud on the part of the taxing authority:

"[T]he taxation of property is a legislative rather than a judicial function [citation], and *** in the absence of fraud, the courts have no power to review the valuation of property fixed for taxation purposes by the appropriate assessing officers [citations].

A taxpayer may challenge an assessment on the basis of either actual or *** constructive fraud. [Citation.] A presumption exists that a tax is just and that the officers levying it have honestly discharged their duties [citation]; the burden is on the taxpayer to establish, by clear and convincing evidence, that the taxing authorities have not exercised their honest judgment and that the assessment is constructively fraudulent." In re Application of the County Treasurer, 131 Ill. 2d 541, 550-51 (1989) (hereafter Ford Motor Co.).

On June 15, 1994, one day after the trial court issued its memorandum decision denying Penney's objection to the collector's application, Senate Bill 1336 was passed by the Illinois General Assembly. The bill, which was subsequently signed into law on September 9, 1994, amended section 23—15 of the Property Tax Code. Pub. Act 88—642, § 5, eff. September 9, 1994 (amending 35 ILCS 200/ 23—15) (West Supp. 1993)) (hereafter 1994 amendment). Section 23—15 governs tax objection hearings. The 1994 amendment added language abolishing the requirement of a showing of constructive fraud:

"§ 23—15. Tax objection hearing. *** The court shall have and exercise jurisdiction in the matter without requiring proof that the assessment was not made on the basis of honest judgment and to the extent case law, including In Re Application of the County

Treasurer (Ford Motor Company), 131 Ill.2d 541 (1989), holds to the contrary, it is overruled." 35 ILCS 200/23—15 (West 1994).

During the pendency of this appeal, section 23—15 was amended in its entirety. Pub. Act 89—126, § 5, eff. July 11, 1995 (amending 35 ILCS 200/23—15 (West 1994)) (hereafter 1995 amendment). As to the doctrine of constructive fraud, the 1995 amendment retained language consistent with the earlier amendment:

"If an objection is made claiming incorrect valuation, the court shall consider the objection without regard to the correctness of any practice, procedure, or method of valuation followed by the assessor, board of appeals, or board of review in making or reviewing the assessment, and without regard to the intent or motivation of any assessing official. The doctrine known as constructive fraud is hereby abolished for purposes of all challenges to taxes, assessments, or levies." 35 ILCS 200/23—15(b)(3) (West Supp. 1995).

The 1995 amendment further provides that it "shall apply to all tax objection matters still pending for any tax year." 35 ILCS 200/23—15(d) (West Supp. 1995).

■ In *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282 (1996), our supreme court reviewed the various approaches utilized by Illinois courts in determining the applicability of a legislative amendment while a case is pending on appeal, *i.e.*, the legislative intent approach and the vested rights or retroactivity approach. The court held:

"Of these two approaches, the better approach is to apply the law that applies by its terms at the time of the appeal, unless doing so would interfere with a vested right. This is because retroactivity is defined in terms of the effect an amendment has on vested rights. *** [W]here an amendment does not reach back and interfere with vested rights, there is no truly retroactive impact." *Armstead*, 171 Ill. 2d at 289.

A "vested right" has been defined as "an expectation that is so far perfected that it cannot be taken away by legislation." *Armstead*, 171 Ill. 2d at 290-91, citing *Sanelli v. Glenview State Bank*, 108 Ill. 2d 1, 20 (1985). Thus, where a change in the statute creates a new obligation or imposes a new duty with respect to a past transaction, the amendment will not be applied to the existing controversy. *Armstead*, 171 Ill. 2d at 290-91. Conversely, where a vested right is not involved, or has not been perfected, or where the amendment is procedural in nature, the amendment can be applied without any retroactive impact. *Armstead*, 171 Ill. 2d at 290. The collector maintains, and we agree, that the amendments to the Property Tax Code at issue here interfere with vested rights and that this

controversy must thus be decided under the Property Tax Code as it existed at the time of trial.

In Illinois, the expiration of the statute of limitations applicable to a particular cause creates a vested right beyond legislative interference. *Sepmeyer v. Holman*, 162 Ill. 2d 249, 254-55 (1994); *Country Mutual Insurance Co. v. Knight*, 40 Ill. 2d 423, 428 (1968); *Board of Education of Normal School District v. Blodgett*, 155 Ill. 441, 446-50 (1895). Such right is no less valuable than the plaintiff's right to bring the suit itself. *Blodgett*, 155 Ill. at 449. Thus, where the limitations period has already expired, the legislature is without power to "reach back and realign" the interests of the parties. *Sepmeyer*, 162 Ill. 2d at 255.

Although here we are not faced with an amendatory act which purports to revive a previously barred cause of action, the 1994 and 1995 amendments to the Property Tax Code, if applied to the existing controversy, would impermissibly allow the legislature to "reach back and realign" the interests of the collector and Penney after trial on the merits has already been concluded. Although the collector's expectation that Penney would be required to demonstrate fraud is not in the nature of an affirmative defense (as is the statute of limitations), this proof requirement nonetheless defined the relationship between the parties for purposes of the tax objection hearing and, significantly, set the threshold requirement for judicial review. We do not believe that the legislature is free to redefine the parties' relative positions after the fact.

This court's recent decision in *Harraz v. Snyder*, 283 Ill. App. 3d 254, 669 N.E.2d 911 (1996), is instructive. In *Harraz*, we considered whether the new statutory pleading requirements under the Civil Justice Reform Amendments of 1995 for a hospital's apparent-agency liability apply to a cause of action refiled after voluntary dismissal where the original cause of action was filed prior to enactment of the amendment. We determined that the amendment altered the obligations and liabilities between the parties "by modifying significantly the elements to be pleaded (and proved) in order to make the hospital a party to the suit" and "impose[d] a new disability upon the plaintiff with respect to a transaction that had already occurred." *Harraz*, 283 Ill. App. 3d at 261. Thus, the legislative amendment effected a substantive change in the law and would only be applied prospectively. We further held that the rights and obligations of the parties became vested at the time the cause of action accrued which the amendatory act could not impair. *Harraz*, 283 Ill. App. 3d at 263.

Here, the 1994 and 1995 amendments modify the elements that Penney, as the tax objector, must plead and ultimately prove in

order to obtain judicial review of the assessment and prevail on its objection. This change imposes a new disability on the collector, who proceeded at trial on the basis that the assessment would be upheld unless Penney could demonstrate constructive fraud. Trial having been concluded, the rights and obligations of the parties as to that proceeding are fixed and cannot be impaired by subsequent amendment, notwithstanding that the trial court's judgment is subject to appeal.

Penney argues that the 1994 and 1995 amendments effect only a change in the burden of proof which, under *People v. Frieder*, 90 Ill. App. 3d 116, 413 N.E.2d 432 (1980), is merely a procedural change and thus fully retroactive. We disagree. At issue in *Frieder* was a 1976 amendment to section 41 of the Civil Practice Act governing attorney fees and expenses. The amendment eliminated the movant's burden to prove that the opponent's allegations were made in the absence of good faith. Notwithstanding that the section 41 motion was filed after the effective date of the amendment, the opponent argued that the movant was required to show lack of good faith because the complaints were filed prior to the effective date of the amendment. The court soundly rejected this argument:

> "What we are concerned with here is the defendants' statutory burden of proof. A party's statutory burden of proof cannot be governed by a statute no longer in effect at the time the proceeding in which that party has the burden is initiated." *Frieder*, 90 Ill. App. 3d at 120.

Thus, *Frieder* does not address the situation present here where a change in the burden of proof was effected after conclusion of the proceeding in which such burden is controlling. Additional authorities cited by Penney are distinguishable from the case at bar and do not persuade us that a different result should obtain.

We note, too, that Penney's attempt to label the amendments "procedural," even if technically correct (see *Schuttler v. Ruark*, 225 Ill. App. 3d 678, 684, 588 N.E.2d 478 (1992)), does not automatically require that the amendments be applied to the present controversy. The general rule, which permits retroactive application of an amendment relating only to procedural matters, does not apply where, as here, the operation of the rule affects a substantive right. *Matviuw v. Johnson*, 111 Ill. App. 3d 629, 632, 444 N.E.2d 606 (1982); *Dils v. City of Chicago*, 62 Ill. App. 3d 474, 481 n.1, 378 N.E.2d 1130 (1978).

The 1994 amendment purports to vest the court with jurisdiction to hear tax objection matters without requiring proof of fraud. The 1995 amendment additionally provides that "[o]bjections to assessments shall be heard de novo" and that relief shall be granted where

an assessment is "incorrect or illegal." 35 ILCS 200/23—15(b)(3) (West Supp. 1995). The amendments plainly provide the taxpayer with a right and access to the courts not previously available. Moreover, the presumptive validity and finality of the taxing authority's assessments has been eliminated. Such substantive changes in the law will not permit application other than prospectively.

Finally, the fact that the 1995 amendment mandates that it "shall apply to all tax objection matters still pending" does not change the result. 35 ILCS 200/23—15 (West Supp. 1995). The legislature is without authority to enact a law that is truly retroactive, *i.e.*, one that impairs vested rights, even if such retroactive application is plainly expressed. *Armstead*, 171 Ill. 2d at 290. Further, this court will not adopt an interpretation of a statute that would necessarily render it invalid or unconstitutional. *Mulligan v. Joliet Regional Port District*, 123 Ill. 2d 303, 312 (1988); *People v. Williams*, 119 Ill. 2d 24, 28 (1987). Thus, application of the 1995 amendment necessarily excludes cases that have already proceeded to trial since, as discussed above, such application would interfere with a vested right.

Accordingly, we find that the Property Tax Code as it existed at the time of trial governs the disposition of this case on appeal. We, therefore, need not address the parties' constitutional arguments and express no opinion as to whether the 1994 or 1995 amendment violates the separation of powers doctrine or otherwise runs afoul of the Illinois Constitution.

## II

We next address whether, under the former version of the Property Tax Code, the trial court properly ruled in favor of the collector. The decision of the trial court will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *Tampam Farms, Inc. v. Supervisor of Assessments*, 271 Ill. App. 3d 798, 801-02 (1995).

Two witnesses testified at trial: John Mundie, an appraiser hired by Penney, and Hugh McKinnon, a representative of the assessor's office. The trial court found Mundie credible and his appraisal the result of "a systematic, professional evaluation of all the known material and relevant facts." The court agreed that the value of the property was as represented in Mundie's appraisal—$6,800,000, with a corresponding assessed valuation of $2,720,000. The court found McKinnon honest, though at times appearing evasive. He testified generally as to the procedure used to assess property, but could not testify as to how the Penney property assessment was computed since the relevant records were not available to McKinnon, the rec-

ords having been destroyed in late 1985 or early 1986 due to the county's limited storage space.

The trial court found that Penney had failed to demonstrate that the taxing authority had not exercised its honest judgment and denied Penney's objection. We agree.

■ A property tax assessment is presumed valid and may only be challenged by the taxpayer on the basis of actual or constructive fraud. *Ford Motor Co.*, 131 Ill. 2d at 550. The burden is on the taxpayer to demonstrate by clear and convincing evidence that the taxing authority did not exercise its honest judgment and that the assessment is fraudulent. *Ford Motor Co.*, 131 Ill. 2d at 550-51. An assessment will not be set aside merely because the property has been overvalued. Rather, the taxpayer must present some evidence of the circumstances surrounding the assessment indicating that the overvaluation was not made in the exercise of the assessor's honest judgment. *Ford Motor Co.*, 131 Ill. 2d at 553. Thus, our supreme court has repeatedly refused to set aside excessive assessments, even where the difference in the property valuations was as much as 80%, in the absence of evidence that the assessor did not honestly discharge his duties. See *Ford Motor Co.*, 131 Ill. 2d at 552 (and cases cited therein).

■ Here, Penney did not present any evidence that the assessment was the product of actual or constructive fraud. Nothing in McKinnon's testimony even hints that the assessor deviated from his standard practice and methodology for valuing properties or that the assessment is otherwise fraudulent. Although the assessed valuation proposed by Penney's expert was 38% less than the assessed valuation as determined by the assessor, such evidence, without more, does not satisfy Penney's burden of proof. The taxpayer must present evidence of circumstances indicating that the assessment is not the product of the assessor's honest judgment. This requirement avoids speculation as to how great the overvaluation must be before the court will consider it "grossly excessive." *Ford Motor Co.*, 131 Ill. 2d at 552-53.

We disagree with Penney that McKinnon's inability to explain in detail the circumstances surrounding the assessment, in large measure because the underlying documentation presumably had been destroyed, vitiates the presumptive validity of the assessment, thereby shifting the burden to the assessor to come forward with evidence in support of the assessment. *In re Application of the County Collector of Cook County*, 261 Ill. App. 3d 494, 633 N.E.2d 778 (1993), is in point.

There, the taxpayer, Atlas Corporation (Atlas), introduced

testimony from the appraiser who, while employed by the assessor's office, recommended a valuation of the subject property significantly less than the $1.6 million ultimately assessed. The collector stood on its application and offered no evidence in response to the objection. The trial court concluded that the assessor's failure to offer any testimony as to why he might have rejected what appeared to be a reasonable and rational approach to valuation left the court with no conclusion but that the assessment was constructively fraudulent. We reversed.

Relying on the oft-cited principles in *Ford Motor Co.*, we determined that the assessor's rejection of his own appraiser's valuation was not evidence that in so doing the assessor was not exercising his honest judgment, particularly where the assessor had other data available from which an alternate valuation could be made. *In re Application of the County Collector*, 261 Ill. App. 3d at 498. Thus, we concluded that the "collector's failure to present any rebuttal evidence cannot help Atlas meet its initial burden of proving constructive fraud by clear and convincing evidence." *In re Application of the County Collector*, 261 Ill. App. 3d at 499.

Similarly, we find that the collector's failure here to present any rebuttal evidence or McKinnon's failure to adequately explain how the assessment was determined cannot help Penney meet its initial burden of proof. We believe this result fully comports with *Ford Motor Co.* wherein our supreme court stated that "mere proof of an excessive assessment does not shift the burden to the assessing authority to explain the assessment." *Ford Motor Co.*, 131 Ill. 2d at 553.[1]

Further, based on the record before us, we decline to impute an ill motive to the taxing authority, sufficient to create an inference of fraud, based on its purported destruction of the underlying documentation. McKinnon testified that he was unaware whether the underlying working papers for this particular assessment existed, although he had made some inquiries in the assessor's office and made a search of the records. He further testified that, due to space limitations, the working papers are generally disposed of within months of the completion of the assessment and that the records relative to the Penney assessment were probably destroyed in late 1985 or early

---

[1]We note that, on the day of trial, Penney agreed to accept McKinnon as a substitute for the witness originally scheduled to testify from the assessor's office. Although the court offered Penney the opportunity to reopen discovery, Penney elected to proceed to trial without having tested McKinnon's knowledge of or involvement in the assessment of the subject property.

1986. We believe that this testimony is insufficient to create an inference of fraud, and Penney presented no other evidence that would suggest that the purported document destruction was undertaken in an effort to frustrate Penney's challenge to the assessment. In light of the presumptive validity of the assessment and the taxpayer's heavy burden, we find that the trial court committed no error by failing to shift the burden to the taxing authority to come forward with evidence in support of the assessment.

Our decision today is restricted to the facts present here and should not be construed as some sort of tacit approval of the systematic destruction of documents in anticipation of litigation. We recognize that a taxpayer's ability to present evidence of fraud may frequently require reliance on documents within the taxing authority's control. Thus, the deliberate destruction of the pertinent records, coupled with knowledge by the taxing authority of a challenge to the assessment and evidence of substantial overvaluation, may provide grounds for an inference of fraud. See *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.*, 159 Ill. App. 3d 834, 843, 512 N.E.2d 1286 (1987) (fraud may be inferred from the relationship of the parties or from the surrounding circumstances). In this case, however, there was insufficient evidence from which to make such an inference.

Based on the foregoing, we find that the decision of the trial court is not against the manifest weight of the evidence and its decision in favor of the collector is affirmed.

Affirmed.

McNULTY, P.J., and COUSINS, J., concur.