FIFTH DIVISION
 February 7, 1997

No. 1-95-0917

In re APPLICATION OF EDWARD ) Appeal from the
J. ROSEWELL, as County Treasurer) Circuit Court
and Ex-Officio County Collector ) of Cook County
of Cook County, Illinois, for )
Judgment and Order of Sale )
Against Real Estate Returned ) Misc. No. 86-34
Delinquent for the Non-Payment ) 1985 Objection No. 721
of General Taxes for the Year )
1985 (Edward J. Rosewell, )
Applicant-Appellee, v. ) The Honorable
J.C. Penney Company, Inc., ) Michael J. Murphy,
Objector-Appellant.) ) Judge Presiding

 JUSTICE HOURIHANE delivered the opinion of the court:

 This is an appeal by J.C. Penney Company, Inc. (Penney) from
an order of the circuit court denying Penney's request for a
reduction in the assessed valuation of certain real property and
partial refund of taxes paid in full under protest. 
 The Cook County assessor (assessor) proposed an assessed
valuation of $6,014,504 for tax year 1985 on Penney's North
Riverside retail store. On Penney's complaint, the assessed
valuation was reduced to $4,357,919. Thereafter, Penney filed a
complaint with the Cook County Board of Tax Appeals, which denied
any relief. Penney paid the corresponding tax of $587,866.94 in
full under protest and subsequently filed an objection to the
application of the Cook County collector (collector) for judgment
and order of sale. The trial court ruled that Penney had failed
to demonstrate actual or constructive fraud by the taxing
authority and denied Penney's objection. In its post-trial
motion for reconsideration, Penney argued that the trial court
misapprehended the law as to Penney's burden to establish fraud
by the taxing authority. Penney also argued that, in any event,
pursuant to a 1994 amendment to the Property Tax Code (Pub. Act
88-642, 5, eff. September 9, 1994 (amending 35 ILCS 200/23-15)
(West Supp. 1993))) which became effective three months after
trial in this matter, Penney need not demonstrate constructive
fraud. The trial court denied Penney's motion to reconsider,
finding that the 1994 amendment did not apply (and even if
applicable, was unconstitutional). Penney sought immediate
appeal before the Illinois Supreme Court (134 Ill. 2d R. 302(a)),
which remanded the matter to this court for disposition (155 Ill.
2d R. 365).
 On appeal, Penney argues that a 1995 amendment to the
Property Tax Code (Pub. Act 89-126, 5, eff. July 11, 1995
(amending 35 ILCS 200/23-15 (West 1994))) applies to the instant
case and eliminates the burden of proving constructive fraud. In
the alternative, Penney argues that the 1994 amendment controls
and similarly removes the requirement of demonstrating fraud. 
Finally, Penney contends that even if the statutory amendments
are inapplicable, it made an adequate showing of fraud and the
judgment of the trial court should be reversed.
 The collector counters that either amendment may only be
applied prospectively and that the trial court correctly applied
the doctrine of constructive fraud to the evidence presented at
trial.
 For the reasons set forth below, we affirm. 
 I
 At the time of trial in this matter, it was settled law, and
the parties so stipulated, that an objecting taxpayer must
demonstrate actual or constructive fraud on the part of the
taxing authority:
 "[T]he taxation of property is a legislative
 rather than a judicial function [citation], and
 *** in the absence of fraud, the courts have no
 power to review the valuation of property fixed
 for taxation purposes by the appropriate assessing
 officers [citations].
 A taxpayer may challenge an assessment on the
 basis of either actual or *** constructive fraud. 
 [citation] A presumption exists that a tax is
 just and that the officers levying it have
 honestly discharged their duties [citation]; the
 burden is on the taxpayer to establish, by clear
 and convincing evidence, that the taxing
 authorities have not exercised their honest
 judgment and that the assessment is constructively
 fraudulent." In re Application of County
 Treasurer, 131 Ill. 2d 541, 550-51 (1989)
 (hereafter Ford Motor Company).
 On June 15, 1994, one day after the trial court issued its
Memorandum Decision denying Penney's objection to the collector's
application, Senate Bill 1336 was passed by the Illinois General
Assembly. The bill, which was subsequently signed into law on
September 9, 1994, amended section 23-15 of the Property Tax Act. 
Pub. Act 88-642, 5, eff. September 9, 1994 (amending 35 ILCS
200/23-15) (West Supp. 1993)) (hereafter "1994 amendment").
Section 23-15 governs tax objection hearings. The 1994 amendment
added language abolishing the requirement of a showing of
constructive fraud:
 "23-15. Tax objection hearing. *** The
 court shall have and exercise jurisdiction in the
 matter without requiring proof that the assessment
 was not made on the basis of honest judgment and
 to the extent case law, including In Re
 Application of the County Treasurer (Ford Motor
 Company), 131 Ill.2d 541 (1989), holds to the
 contrary, it is overruled. ***" 35 ILCS 200/23-15
 (West 1994).
 During the pendency of this appeal, section 23-15 was
amended in its entirety. Pub. Act 89-126, 5, eff. July 11, 1995
(amending 35 ILCS 200/23-15 (West 1994))(hereafter "1995
amendment"). As to the doctrine of constructive fraud, the 1995
amendment retained language consistent with the earlier
amendment:
 "If an objection is made claiming incorrect
 valuation, the court shall consider the objection
 without regard to the correctness of any practice,
 procedure, or method of valuation followed by the
 assessor, board of appeals, or board of review in
 making or reviewing the assessment, and without
 regard to the intent or motivation of any
 assessing official. The doctrine known as
 constructive fraud is hereby abolished for
 purposes of all challenges to taxes, assessment,
 or levies." 35 ILCS 200/23-15 (West Supp. 1995).
The 1995 amendment further provides that it "shall apply to all
tax objection matters still pending for any tax year ***." 35
ILCS 200/23-15(d) (West Supp. 1995).
 In First American Trust v. Armstead, 171 Ill. 2d 282 (1996)
our supreme court reviewed the various approaches utilized by
Illinois courts in determining the applicability of a legislative
amendment while a case is pending on appeal, i.e., the
legislative intent approach, and the vested rights or
retroactivity approach. The court held:
 "Of these two approaches, the better approach
 is to apply the law that applies by its terms at
 the time of the appeal, unless doing so would
 interfere with a vested right. This is because
 retroactivity is defined in terms of the effect an
 amendment has on vested rights. *** [W]here an
 amendment does not reach back and interfere with
 vested rights, there is no truly retroactive
 impact." Armstead, 171 Ill. 2d at 289.
A "vested right" has been defined as "an expectation that is so
far perfected that it cannot be taken away by legislation." 
Armstead, 171 Ill. 2d at 290, citing Sanelli v. Glenview State
Bank, 108 Ill. 2d 1, 20 (1985). Thus, where a change in the
statute creates a new obligation or imposes a new duty with
respect to a past transaction, the amendment will not be applied
to the existing controversy. Armstead, 171 Ill. 2d at 290-91. 
Conversely, where a vested right is not involved, or has not been
perfected, or where the amendment is procedural in nature, the
amendment can be applied without any retroactive impact. 
Armstead, 171 Ill. 2d at 290. The collector maintains, and we
agree, that the amendments to the Property Tax Act at issue here
interfere with vested rights and that this controversy must thus
be decided under the Property Tax Act as it existed at the time
of trial.
 In Illinois, the expiration of the statute of limitations
applicable to a particular cause creates a vested right beyond
legislative interference. Sepmeyer v. Holman, 162 Ill. 2d 249,
254-55 (1994); Country Mutual Insurance Co. v. Knight, 40 Ill. 2d
423, 428 (1968); Board of Education of Normal School District v.
Blodgett, 155 Ill. 441, 446-50 (1895). Such right is no less
valuable than the plaintiff's right to bring the suit itself. 
Blodgett, 155 Ill. at 449. Thus, where the limitations period
has already expired, the legislature is without power to "reach
back and realign" the interests of the parties. Sepmeyer, 162
Ill. 2d at 255. 
 Although here we are not faced with an amendatory act which
purports to revive a previously barred cause of action, the 1994
and 1995 amendments to the Property Tax Act, if applied to the
existing controversy, would impermissibly allow the legislature
to "reach back and realign" the interests of the collector and
Penney after trial on the merits has already been concluded. 
Although the collector's expectation that Penney would be
required to demonstrate fraud is not in the nature of an
affirmative defense (as is the statute of limitations), this
proof requirement nonetheless defined the relationship between
the parties for purposes of the tax objection hearing and,
significantly, set the threshold requirement for judicial review. 
We do not believe that the legislature is free to redefine the
parties' relative positions after the fact.
 This court's recent decision in Harraz v. Snyder III, 283
Ill. App. 3d 254, 669 N.E.2d 911 (1996) is instructive. In
Harraz, we considered whether the new statutory pleading
requirements under the Civil Justice Reform Amendments of 1995 
for hospital apparent agency liability apply to a cause of action
refiled after voluntary dismissal where the original cause of
action was filed prior to enactment of the amendment. We
determined that the amendment altered the obligations and
liabilities between the parties "by modifying significantly the
elements to be pleaded (and proved) in order to make the hospital
a party to the suit," and "impose[d] a new disability upon the
plaintiff with respect to a transaction that had already
occurred." Harraz, 283 Ill. App. 3d at 261. Thus, the
legislative amendment effected a substantive change in the law
and would only be applied prospectively. We further held that
the rights and obligations of the parties became vested at the
time the cause of action accrued which the amendatory act could
not impair. Harraz, 283 Ill. App. 3d at 263.
 Here, the 1994 and 1995 amendments modify the elements that
Penney, as the tax objector, must plead and ultimately prove in
order to obtain judicial review of the assessment and prevail on
its objection. This change imposes a new disability on the
collector, who proceeded at trial on the basis that the
assessment would be upheld unless Penney could demonstrate
constructive fraud. Trial having been concluded, the rights and
obligations of the parties as to that proceeding are fixed and
cannot be impaired by subsequent amendment, notwithstanding that
the trial court's judgment is subject to appeal. 
 Penney argues that the 1994 and 1995 amendments effect only
a change in the burden of proof which, under People v. Frieder,
90 Ill. App. 3d 116, 413 N.E.2d 432 (1980), is merely a
procedural change and thus fully retroactive. We disagree. At
issue in Frieder was a 1976 amendment to section 41 of the Civil
Practice Act governing attorney fees and expenses. The amendment
eliminated the movant's burden to prove that the opponent's
allegations were made in the absence of good faith. 
Notwithstanding that the section 41 motion was filed after the
effective date of the amendment, the opponent argued that the
movant was required to show lack of good faith because the
complaints were filed prior to the effective date of the
amendment. The court soundly rejected this argument:
 "What we are concerned with here is the
 defendants' statutory burden of proof. A party's
 statutory burden of proof cannot be governed by a
 statute no longer in effect at the time the
 proceeding in which that party has the burden is
 initiated." Frieder, 90 Ill. App. 3d at 120.
Thus, Frieder does not address the situation present here where a
change in the burden of proof was effected after conclusion of
the proceeding in which such burden is controlling. Additional
authorities cited by Penney are distinguishable from the case at
bar and do not persuade us that a different result should obtain. 
 We note, too, that Penney's attempt to label the amendments
"procedural", even if technically correct (see Schuttler v.
Ruark, 225 Ill. App. 3d 678, 684, 588 N.E. 2d 478 (1992)), does
not automatically require that the amendments be applied to the
present controversy. The general rule which permits retroactive
application of an amendment relating only to procedural matters
does not apply where, as here, the operation of the rule affects
a substantive right. Matviuw v. Johnson, 111 Ill. App. 3d 629,
632, 444 N.E.2d 606 (1982); Dils v. City of Chicago, 62 Ill. App.
3d 474, 481 n.1, 378 N.E.2d 1130 (1978). 
 The 1994 amendment purports to vest the court with
jurisdiction to hear tax objection matters without requiring
proof of fraud. The 1995 amendment additionally provides that
"objections to assessments shall be heard de novo" and that
relief shall be granted where an assessment is "incorrect or
illegal." The amendments plainly provide the taxpayer with a
right and access to the courts not previously available. 
Moreover, the presumptive validity and finality of the taxing
authority's assessments has been eliminated. Such substantive
changes in the law will not permit application other than
prospectively.
 Finally, the fact that the 1995 amendment mandates that it
"shall apply to all tax objection matters still pending" does not
change the result. The legislature is without authority to enact
a law that is truly retroactive, i.e., one which impairs vested
rights, even if such retroactive application is plainly
expressed. Armstead, 171 Ill. 2d at 290. Further, this court
will not adopt an interpretation of a statute which would
necessarily render it invalid or unconstitutional. Mulligan v.
Joliet Regional Port District, 123 Ill. 2d 303, 312 (1988);
People v. Williams, 119 Ill. 2d 24, 28 (1986). Thus, application
of the 1995 amendment necessarily excludes cases which have
already proceeded to trial since, as discussed above, such
application would interefere with a vested right. 
 Accordingly, we find that the Property Tax Act as it existed
at the time of trial governs the disposition of this case on
appeal. We, therefore, need not address the parties'
constitutional arguments and express no opinion as to whether the
1994 or 1995 amendments violate the separation of powers doctrine
or otherwise run afoul of the Illinois constitution.
 II.
 We next address whether, under the former version of the
Property Tax Act, the trial court properly ruled in favor of the
collector. The decision of the trial court will not be disturbed
on review unless contrary to the manifest weight of the evidence. 
Tampan Farms v. Supervisor of Assessments for Ogle County, 271
Ill. App. 3d 798, 801-2 (1995).
 Two witnesses testified at trial: John Mundie, an appraiser
hired by Penney, and Hugh McKinnon, a representative of the
assessor's office. The trial court found Mundie credible, and
his appraisal the result of "a systematic, professional
evaluation of all the known material and relevant facts." The
court agreed that the value of the property was as represented in
Mundie's appraisal--$6,800,000, with a corresponding assessed
valuation of $2,720,000. The court found McKinnon honest, though
at times appearing evasive. He testified generally as to the
procedure used to assess property, but could not testify as to
how the Penney property assessment was computed since the
relevant records were not available to McKinnon, the records
having been destroyed in late 1985 or early 1986 due to the
county's limited storage space.
 The trial court found that Penney had failed to demonstrate
that the taxing authority had not exercised its honest judgment
and denied Penney's objection. We agree.
 A property tax assessment is presumed valid and may only be
challenged by the taxpayer on the basis of actual or constructive
fraud. Ford Motor Company, 131 Ill. 2d at 550. The burden is on
the taxpayer to demonstrate by clear and convincing evidence that
the taxing authority did not exercise its honest judgment and
that the assessment is fraudulent. Ford Motor Company, 131 Ill.
2d at 550-51. An assessment will not be set aside merely because
the property has been overvalued. Rather, the taxpayer must
present some evidence of the circumstances surrounding the
assessment indicating that the overvaluation was not made in the
exercise of the assessor's honest judgment. Ford Motor Company,
131 Ill. 2d at 553. Thus, our supreme court has repeatedly
refused to set aside excessive assessments, even where the
difference in the property valuations was as much as 80%, in the
absence of evidence that the assessor did not honestly discharge
his duties. See Ford Motor Company, 131 Ill. 2d at 552 and cases
cited therein.
 Here, Penney did not present any evidence that the
assessment was the product of actual or constructive fraud. 
Nothing in McKinnon's testimony even hints that the assessor
deviated from his standard practice and methodology for valuing
properties or that the assessment is otherwise fraudulent. 
Although the assessed valuation proposed by Penney's expert was
38% less than the assessed valuation as determined by the
assessor, such evidence, without more, does not satisfy Penney's
burden of proof. The taxpayer must present evidence of
circumstances indicating that the assessment is not the product
of the assessor's honest judgment. This requirement avoids
speculation as to how great the overvaluation must be before the
court will consider it "grossly excessive." Ford Motor Company,
131 Ill. 2d at 552-53.
 We disagree with Penney that McKinnon's inability to explain
in detail the circumstances surrounding the assessment, in large
measure because the underlying documentation presumably had been
destroyed, vitiates the presumptive validity of the assessment,
thereby shifting the burden to the assessor to come forward with
evidence in support of the assessment. In re Application of the
County Collector of Cook County, 261 Ill. App. 3d 494, 633 N.E.2d
778 (1993) is in point. 
 There, the taxpayer, Atlas Corporation (Atlas), introduced
testimony from the appraiser who, while employed by the
assessor's office, recommended a valuation of the subject
property significantly less than the $1.6 million ultimately
assessed. The collector stood on its application and offered no
evidence in response to the objection. The trial court concluded
that the assessor's failure to offer any testimony as to why he
might have rejected what appeared to be a reasonable and rational
approach to valuation left the court with no conclusion but that
the assessment was constructively fraudulent. We reversed. 
 Relying on the oft-cited principles in Ford Motor Company,
we determined that the assessor's rejection of his own
appraiser's valuation was not evidence that in so doing the
assessor was not exercising his honest judgment, particularly
where the assessor had other data available from which an
alternate valuation could be made. In re Application of County
Collector, 261 Ill. App. 3d at 498. Thus, we concluded that the
"collector's failure to present any rebuttal evidence cannot help
Atlas meet its initial burden of proving constructive fraud by
clear and convincing evidence." In re Application of County
Collector, 261 Ill. App. 3d at 499. 
 Similarly, we find that the collector's failure here to
present any rebuttal evidence or McKinnon's failure to adequately
explain how the assessment was determined cannot help Penney meet
its initial burden of proof. We believe this result fully
comports with Ford Motor Company wherein our supreme court stated
that "mere proof of an excessive assessment does not shift the
burden to the assessing authority to explain the assessment." 
Ford Motor Company, 131 Ill. 2d at 553.
 Further, based on the record before us, we decline to impute
an ill motive to the taxing authority, sufficient to create an
inference of fraud, based on its purported destruction of the
underlying documentation. McKinnon testified that he was unaware
whether the underlying working papers for this particular
assessment existed, although he had made some inquiries in the
assessor's office and made a search of the records. He further
testified that, due to space limitations, the working papers are
generally disposed of within months of the completion of the
assessment and that the records relative to the Penney assessment
were probably destroyed in late 1985 or early 1986. We believe
that this testimony is insufficient to create an inference of
fraud, and Penney presented no other evidence which would suggest
that the purported document destruction was undertaken in an
effort to frustrate Penney's challenge to the assessment. In
light of the presumptive validity of the assessment and the
taxpayer's heavy burden, we find that the trial court committed
no error by failing to shift the burden to the taxing authority
to come forward with evidence in support of the assessment. 
 Our decision today is restricted to the facts present here
and should not be construed as some sort of tacit approval of the
systematic destruction of documents in anticipation of
litigation. We recognize that a taxpayer's ability to present
evidence of fraud may frequently require reliance on documents
within the taxing authority's control. Thus, the deliberate
destruction of the pertinent records, coupled with knowledge by
the taxing authority of a challenge to the assessment and
evidence of substantial overvaluation, may provide grounds for an
inference of fraud. See Beaton & Associates, Ltd. v. Joslyn
Manufacturing & Supply Co., 159 Ill. App. 3d 834, 843, 512 N.E.2d
1286 (1987) (fraud may be inferred from the relationship of the
parties or from the surrounding circumstances). In this case,
however, there was insufficient evidence from which to make such
an inference.
 Based on the foregoing, we find that the decision of the
trial court is not against the manifest weight of the evidence
and its decision in favor of the collector is affirmed.
 AFFIRMED.
 McNULTY, P.J., and COUSINS, J., concur.